[No. A077997. First Dist., Div. One. Oct. 20, 1998.]

ROBERT ETTER, JR., Plaintiff and Appellant, v.
VERIFLO CORPORATION, Defendant and Respondent.

**COUNSEL**

Louis A. Highman and Bruce J. Highman for Plaintiff and Appellant.

Littler Mendelson, George J. Tichy II and Arthur M. Eidelhoch for Defendant and Respondent.

**OPINION**

**STEIN, J.**—In this action for racial harassment in the workplace, the sole issue raised on appeal is whether the trial court erred in instructing the jury

that "occasional, isolated, sporadic, or trivial" acts of racial harassment are not actionable. We conclude that the instruction was not erroneous, and we affirm the judgment in favor of defendant.

## PROCEDURAL HISTORY

Plaintiff brought an action for damages under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) alleging that he had been subjected to racial harassment and discrimination while working for defendant Veriflo Corporation.[1] A jury trial was held, and the jury returned a unanimous verdict in favor of defendant. In particular, the jury responded "no" to the following question on the special verdict form: "Question No. 1: Did Plaintiff Robert Etter prove by a preponderance of the evidence that (1) he was subjected to intentional and unwelcome conduct of a racial nature by Anita Grigsby; (2) the conduct complained of was based on race; (3) a reasonable person of Plaintiff's race would have found the racial conduct complained of to be sufficiently severe or pervasive to alter the conditions of the person's employment and create a hostile or abusive working environment; (4) Plaintiff found the racial conduct complained of to be sufficiently severe or pervasive to alter the conditions of his employment and create a hostile or abusive working environment; and (5) the conduct complained of was the legal cause of damages to Plaintiff?"

Plaintiff appeals from the judgment entered in favor of defendant.

## FACTS

Plaintiff, then age 37, was hired on August 28, 1995, by Kelly Services, Inc., a temporary employment agency, and was assigned to work as a stockroom clerk at defendant Veriflo Corporation. Plaintiff worked the swing shift (2:30 to 11 p.m.) as did Anita Grigsby, another worker in the "stores department."[2]

Plaintiff testified at trial that Grigsby subjected him to offensive racial comments during the six weeks he worked at Veriflo. Plaintiff testified that Grigsby called him "boy" almost daily; that she called him "Buckwheat" between five and ten times; that she called him "Jemima" twice on one day, and that she called him "Stymie" (another character on The Little Rascals) once or twice. Plaintiff also testified that Grigsby asked him why some

---

[1]Plaintiff settled with codefendant Kelly Services, Inc.

[2]Because no issue is raised on appeal concerning Veriflo's vicarious liability for Grigsby's conduct, we need not discuss the facts surrounding the controversy at trial over whether Anita Grigsby was plaintiff's supervisor. (Cf. *Burlington Industries, Inc.* v. *Ellerth* (1998) 524 U.S. 742 [118 S.Ct. 2257, 141 L.Ed.2d 633].)

Black people pronounce the work "ask" as "axe" and then ridiculed the pronunciation of other Black workers.

Further, plaintiff testified that Grigsby told a joke about two Black girls; commented on the O.J. Simpson trial; and declared her dislike of going to Oakland because of the prevalence of violence by Blacks.

Plaintiff conceded that he never told Grigsby or her supervisor that he found Grigsby's remarks offensive. Just a week before quitting work at Veriflo, plaintiff affirmed his interest in permanent employment at Veriflo.

Plaintiff did, however, complain to Kelly Services. Plaintiff eventually quit working at Veriflo on October 12, assertedly because of the harassment by Grigsby. Plaintiff called Kelly Services on October 13 to complain about Grigsby's conduct.

Anita Grigsby denied that she ever called plaintiff "boy" instead of his name. She conceded that she did use the expression, "oh, boy." But plaintiff testified that he did not find that expression derogatory.

Grigsby denied addressing plaintiff as "Buckwheat," but she testified that once when plaintiff talked of cutting his hair, Grigsby replied, "Oh, don't do that. You'll look like Buckwheat." Plaintiff laughed.

Grigsby also denied calling plaintiff "Jemima" or "Stymie." She denied manipulating conversations with coworkers to make them say "ask," pronounced as "axe." Rather, Grigsby testified that it was plaintiff who mimicked or mocked the other workers' pronunciation of "ask."

Grigsby said she did discuss the O.J. Simpson trial, but she never told a joke about Black people. She vaguely recalled a discussion about Blacks killing Blacks with guns.

Thomas Mason, another Black stockroom worker, testified that Grigsby had never addressed him as "boy" and he never heard Grigsby address plaintiff as "boy." But Grigsby did refer to him and plaintiff collectively as "you boys," e.g., "You boys get back to work." Mason did not find the statement offensive. Mason also heard Grigsby tell plaintiff he looked like the picture of "Jemima" on the package box when plaintiff was wearing a bandanna on his head. Plaintiff laughed. Mason never heard Grigsby call plaintiff "Buckwheat" or "Stymie." Mason described the relationship between Grigsby and plaintiff as friendly; he never heard Grigsby say anything derogatory or disrespectful.

Willie Evans also recalled hearing Grigsby tell plaintiff he looked like "Aunt Jemima." And he heard Grigsby use the terms "boy," "Buckwheat," and "Stymie." But he had no specific recollection of the episodes. Evans, too, described the relationship between Grigsby and plaintiff as friendly. He recalled that Grigsby used the term "Buckwheat" when "we were all kidding."

Larry Williams testified that Grigsby used the term "boy" once. She said to him and two other Black employees, "You boys get back to work." He did not consider the remark discriminatory. She might have said "You guys."

Grigsby's supervisor, Marcie Dimaculangan, testified that after plaintiff complained to Kelly Services, Grigsby denied the allegations. Dimaculangan believed from her experience working with Grigsby and observing the friendly bantering between Grigsby and plaintiff that plaintiff's charges of racial harassment were untrue.

In closing argument, counsel for defendant Veriflo argued that plaintiff's testimony was false. Counsel further argued that even if some of the incidents did occur, they were isolated episodes and were not enough to constitute harassment.

DISCUSSION

*Federal Law*

Title VII of the federal Civil Rights Act (hereafter Title VII) makes it unlawful for an employer to discriminate on the basis of race, color, religion, sex, or national origin. (42 U.S.C. § 2000e-2(a)(1).) The lower federal courts have long recognized that an employee may have a cause of action under Title VII for racial discrimination when the employer has created a working environment heavily charged with ethnic or racial insult and ridicule. (*Rogers* v. *Equal Employment Opportunity Com'n* (5th Cir. 1971) 454 F.2d 234, 238; see also *Firefighters Institute, etc.* v. *City of St. Louis* (8th Cir. 1977) 549 F.2d 506, 514-515; *Gray* v. *Greyhound Lines, East* (D.C. Cir. 1976) 545 F.2d 169, 176 [178 App.D.C. 91].) The United States Supreme Court has drawn upon those cases involving racial harassment and has extended the "hostile work environment" theory to claims of harassment based on sex. (*Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 66-67 [106 S.Ct. 2399, 2405-2406, 91 L.Ed.2d 49], following *Henson* v. *City of Dundee* (11th Cir.

1982) 682 F.2d 897, 902; see also *Faragher* v. *City of Boca Raton* (1998) 524 U.S. 775, __ [118 S.Ct. 2275, 2283, 141 L.Ed.2d 662, 676].)[3]

However, the federal courts have also recognized that not all harassing workplace conduct is sufficient to state a claim of discrimination under Title VII. To be actionable, the harassment must be "sufficiently severe or pervasive" to alter the conditions of the victim's employment and create an abusive working environment. (*Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. at p. 67 [106 S.Ct. at p. 2405], quoting from *Rogers* v. *Equal Employment Opportunity Com'n, supra,* 454 F.2d at p. 238; accord, *Faragher* v. *City of Boca Raton, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2283, 141 L.Ed.2d at p. 676]; *Harris* v. *Forklift Systems, Inc.* (1993) 510 U.S. 17, 21 [114 S.Ct. 367, 370, 126 L.Ed.2d 295].) The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" would not violate Title VII, as it would not affect the conditions of employment to a sufficiently significant degree. (*Rogers* v. *Equal Employment Opportunity Com'n, supra,* 454 F.2d at p. 238, quoted with approval in *Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. at p. 67 [106 S.Ct. at pp. 2405-2406]; accord, *Faragher* v. *City of Boca Raton, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2283, 141 L.Ed.2d at p. 676]; *Harris* v. *Forklift Systems, Inc., supra,* 510 U.S. at p. 22 [114 S.Ct. at p. 371].) "[M]ore than an episodic pattern of racial antipathy must be proven to obtain statutory relief. A hostile working environment is shown when the incidents of harassment occur in concert or with a regularity that can reasonably be termed pervasive." (*Lopez* v. *S.B. Thomas, Inc.* (2d Cir. 1987) 831 F.2d 1184, 1189, cited with approval in *Faragher* v. *City of Boca Raton, supra,* 524 U.S. at p. __, fn. 1 [118 S.Ct. at p. 2283, 141 L.Ed.2d at p. 676.)

In its recent decision on sexual harassment, the Supreme Court emphasized that the conduct must be extreme: " 'simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " (*Faragher* v. *City of Boca Raton, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2283, 141 L.Ed.2d at p. 676].) Earlier, in *Harris* v. *Forklift Systems, Inc., supra,* 510 U.S. 17, 22-23 [114 S.Ct. 367, 371], the Supreme Court declared that the "severe or pervasive" standard is not a mathematically precise test, and the court articulated several factors to be considered: "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at

---

[3]In *Faragher* v. *City of Boca Raton,* the court observed that "[a]lthough racial and sexual harassment will often take different forms, and standards may not be entirely interchangeable, we think there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment." (524 U.S. at p. __, fn. 1 [118 S.Ct. at p. 2283, 141 L.Ed.2d at p. 676].)

all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[4] (510 U.S. at pp. 22-23 [114 S.Ct. at p. 371]; see also *Faragher* v. *City of Boca Raton, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2283, 141 L.Ed.2d at p. 676].) Most recently, the Supreme Court explained that the *Harris* factors for assessing whether a working environment is sufficiently hostile, "will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.' " (*Faragher* v. *City of Boca Raton, supra,* 524 U.S. at p. __ [118 S.Ct. at p. 2284, 141 L.Ed.2d at p. 677].)

In summary, we discern from these opinions that the "severe or pervasive" standard establishes a threshold test for assessing the offensive conduct. Under that standard, trivial (i.e., not severe) or occasional, sporadic, or isolated (i.e., not pervasive) incidents of verbal abuse are not actionable.

*California Law*

In California, the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (hereafter FEHA) differs from Title VII in that it explicitly prohibits an employer from harassing an employee on the basis of race, sex, or other specified grounds. (Gov. Code, § 12940, subd. (h).) Harassment includes "[v]erbal harassment, e.g., epithets, derogatory comments or slurs . . . ." (Cal. Code Regs., tit. 2, § 7287.6, subd. (b)(1)(A).) Yet, despite the differences in statutory language, in light of the parallel antidiscriminatory objectives, the California courts have been guided in their interpretations of FEHA by the federal court decisions interpreting Title VII. (See generally, *Heard* v. *Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1747 [52 Cal.Rptr.2d 620]; *Greene* v. *Pomona Unified School Dist.* (1995) 32 Cal.App.4th 1216, 1221, fn. 6 [38 Cal.Rptr.2d 770]; *Carr* v. *Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 18 [28 Cal.Rptr.2d 127]; *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 606 [262 Cal.Rptr. 842].) In particular, although no California cases have directly

---

[4]The holding in *Harris* v. *Forklift Systems, Inc., supra,* 510 U.S. 17, was that the harassing conduct need not have seriously affected the employee's psychological well-being as long as the discriminatory conduct was " 'sufficiently severe or pervasive to alter the conditions of the victim's employment.' " (*Id.* at p. 21 [114 S.Ct. at p. 370].) "[W]hile psychological harm, like any other relevant factor, may be taken into account, no single factor is required." (*Id.* at p. 23 [114 S.Ct. at p. 371].)

addressed racial harassment in the workplace,[5] the California courts have applied the federal threshold standard to claims of sexual harassment and held that FEHA is violated when the harassment was " ' "sufficiently severe or pervasive to alter the conditions of the victim's employment." ' " (*Beyda* v. *City of Los* Angeles (1998) 65 Cal.App.4th 511, 517 [76 Cal.Rptr.2d 547]; *Kelly-Zurian* v. *Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 409 [27 Cal.Rptr.2d 457]; *Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d 590, 609; see also *Pereira* v. *Schlage Electronics* (N.D.Cal. 1995) 902 F.Supp. 1095, 1101-1102.)

*Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d 590, was the first reported California decision involving a claim for workplace harassment under FEHA. Citing several lower federal court decisions, the *Fisher* court articulated the following criteria for evaluating a sexual harassment claim: "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. [Citation.] . . . . [¶] The factors that can be considered in evaluating the totality of the circumstances are: (1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred. [Citation.] [¶] In determining what constitutes 'sufficiently pervasive' harassment, the courts have held that *acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine of a generalized nature.* [Citation.]" (214 Cal.App.3d at pp. 609-610, italics added.)[6]

In the present case, the jury was instructed as follows: "In order to find in favor of Plaintiff on his claim of race harassment, you must find that Plaintiff has proved by a preponderance of the evidence that the racial

---

[5]Pending before the California Supreme Court is the question whether pervasive use of racial slurs in the workplace may be enjoined. (*Aguilar* v. *Avis Rent-a-Car System, Inc.*, review granted Sept. 4, 1996 (S054561).)

[6]Later in the opinion, the *Fisher* court listed a number of cases which have concluded that isolated instances of sexual harassment do not constitute a hostile work environment: "*Jones* v. *Flagship Intern.* [(5th Cir. 1986)] 793 F.2d 714, 716 [supervisor's two suggestive remarks and a single proposition of plaintiff]; *Rabidue* v. *Osceola Refining Co.* (6th Cir. 1986) 805 F.2d 611, 615, 622 [Even though coworker was extremely vulgar and crude and in confrontation posture with plaintiff and nude photos were present, totality of the workplace was not affected.]; *Scott* v. *Sears, Roebuck & Co.* (7th Cir. 1986) 798 F.2d 210, 214 [isolated winks, suggestive remarks and a coworker's single request for a date with plaintiff]; *Downes* v. *F.A.A.* [(D.C. Cir. 1985)] 775 F.2d 288, 293 [243 App.D.C. 323] [Defendant engaged in mildly offensive verbal conduct on three occasions and twice touched plaintiff's hair.]." (214 Cal.App.3d at pp. 611-612.)

conduct complained of was sufficiently severe or pervasive to alter the conditions of employment. In order to find that racial harassment is 'sufficiently severe or pervasive[,]' the acts of racial harassment cannot be occasional, isolated, sporadic, or trivial. The circumstances which you may consider include the following: [¶] 1. The frequency of the racial conduct; [¶] 2. The severity of the racial conduct; [¶] 3. Whether the racial conduct was physically threatening or humiliating, or a mere offensive utterance; and [¶] 4. Whether the racial conduct unreasonably interfered with Plaintiff's work performance." What plaintiff challenges on appeal is the statement within the jury instruction that "the acts of racial harassment cannot be occasional, isolated, sporadic, or trivial."

■ Plaintiff argues that the challenged language—which both parties acknowledge was taken from *Fisher*—misstates the law in that it makes the determinative factor the frequency of the conduct. Plaintiff contends that such a litmus test has been invalidated by the Supreme Court's decision in *Harris* v. *Forklift Systems, Inc., supra,* 510 U.S. 17, 22-23 [114 S.Ct. 367, 371], in which the court declared that "no single factor" is required to prove a hostile working environment and that the measure of "severe or pervasive" harassment is not "mathematically precise."

We reject plaintiff's reading of *Harris* v. *Forklift Systems*. First, the *Harris* court's rejection of a "single factor" was in the context of rejecting a requirement that the plaintiff prove psychological injury. (See fn. 4, *ante*.) The factors enumerated in *Harris* for assessing the hostility of the work environment, including "the frequency of the discriminatory conduct," are virtually identical to the factors identified in *Fisher*. Nothing in *Harris* v. *Forklift Systems* undermines the authority of *Fisher*. Moreover, the *Harris* court's identification of "frequency" as one of several factors to be considered does not negate the principle articulated in *Fisher* that a hostile working environment requires more than occasional and isolated incidents of harassment.[7] Indeed, as we have already discussed above, the Supreme Court's recent decision in *Faragher* v. *City of Boca Raton, supra,* 524 U.S. 775, confirms that the factors identified in *Harris* for measuring the hostility of

---

[7] We note that the challenged statement from *Fisher* has been cited with approval in recent California cases. (*Guthrey* v. *State of California* (1998) 63 Cal.App.4th 1108, 1123-1124 [75 Cal.Rptr.2d 27] [sexual harassment]; *Brown* v. *Smith* (1997) 55 Cal.App.4th 767, 784 [64 Cal.Rptr.2d 301] [housing discrimination]; *Proksel* v. *Gattis* (1996) 41 Cal.App.4th 1626, 1630, fn. 5 [49 Cal.Rptr.2d 322] [sexual harassment]; cf. *Boctor* v. *Los Angeles County Metropolitan Transit Authority* (1996) 48 Cal.App.4th 560, 575 [55 Cal.Rptr.2d 861] [same].) In fact, in *Brown* v. *Smith, supra,* 55 Cal.App.4th at page 785, the court held that the trial court erred in *failing* to define "severe and pervasive" conduct in accordance with the criteria enunciated in *Fisher* and *Harris* v. *Forklift Systems*. In other cases, too, without citing *Fisher*, California courts have recognized the principle that isolated episodes of verbal abuse are not actionable. (See *Department of Corrections* v. *State Personnel Bd.* (1997) 59 Cal.App.4th 131,

the working environment are intended to ensure that isolated incidents, such as the sporadic use of abusive language, will not be actionable.

We also reject plaintiff's contention that the jury instruction given here conflicts with the principle that even a single incident of severe harassment may be sufficient. (E.g., *Doe* v. *Capital Cities* (1996) 50 Cal.App.4th 1038, 1045 [58 Cal.Rptr.2d 122] [violent sexual assault]; see also *Ellison* v. *Brady* (9th Cir. 1991) 924 F.2d 872, 877-878 [dictum: rape would be sufficiently severe]; *Vance* v. *Southern Bell Tel. and Tel. Co.* (11th Cir. 1989) 863 F.2d 1503, 1510 [two incidents in which noose was hung over employee's work station]; *Simon* v. *Morehouse School of Medicine* (N.D.Ga. 1995) 908 F.Supp. 959, 969-970 [single act of sexual assault].) The jury was correctly informed that it must find "severe *or* pervasive" harassment, and the instruction advised the jury of the factors identified in *Harris* v. *Forklift Systems* for evaluating Grigsby's conduct, including the frequency of the conduct and whether the racial conduct was physically threatening or humiliating or merely an offensive utterance. The challenged language that the acts must be more than occasional, isolated, sporadic (i.e., pervasive), or trivial (i.e., severe) was consistent with the legal standard.

In conclusion, we find no error in the jury instruction given here. We emphasize that our approval of the jury instruction is in no way an approval of the hurtful and demeaning remarks allegedly made here. Racial slurs have no place in the work environment or in any environment. Contrary to plaintiff's assertion, however, the law does not exhibit "zero tolerance" for offensive words and conduct. Rather, the law requires the plaintiff to meet a threshold standard of severity or pervasiveness. We hold that the statement within the instruction that severe or pervasive conduct requires more than "occasional, isolated, sporadic, or trivial" acts was an accurate statement of that threshold standard.[8] And under the state of the evidence here, the instruction was unquestionably relevant to the issue before the jury.

The judgment is affirmed.

Strankman, P. J., and Swager, J., concurred.

A petition for a rehearing was denied November 16, 1998, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 3, 1999. Mosk, J., was of the opinion that the petition should be granted.

---

149-150 [69 Cal.Rptr.2d 34]; cf. *Kelly-Zurian* v. *Wohl Shoe Co., supra,* 22 Cal.App.4th 397, 409.)

[8]We are aware that the new BAJI No. 12.05 identifies the *Harris* factors without mentioning that "occasional, isolated, sporadic, or trivial" conduct is not actionable. Because that instruction is not before us, we express no opinion about it. We do not suggest that the instruction given here was a model instruction, only that it was not erroneous.