[No. B155741. Second Dist., Div. Six. Feb. 6, 2003.]

GLENDA DEE, Plaintiff and Appellant, v.
VINTAGE PETROLEUM, INC., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Joseph M. Lovretovich and Leonard Grayver for Plaintiff and Appellant.

Richard C. Turner and J. Jane Fox for Defendant and Respondent.

**OPINION**

**GILBERT, P. J.**—An employee's supervisor asks her to lie about company business, asks her to secretly take a document from the desk of another supervisor, insults her and uses profanity in her presence. On one occasion he makes a negative comment about her race. Here we conclude these circumstances coupled with a single ethnic remark are sufficient to create a triable issue of fact whether the employer has created a hostile work environment.

Glenda Dee appeals a summary judgment granted in favor of defendant Vintage Petroleum, Inc. (Vintage) on her employment discrimination lawsuit. We affirm in part, reverse in part, and remand with instructions.

FACTS

Dee began work as a production clerk for Vintage, in November 1993. In October 1998, Andy Marsh became her supervisor and Paul Strickland became Marsh's supervisor. Strickland changed Dee's working conditions. He required her to discuss "very personal matters" with him instead of bringing them to the attention of the personnel department as she had done in the past. He degraded and insulted her for following his orders and denied responsibility when others criticized these orders. He called Dee a "bitch" and "constantly" used the word "asshole" in her presence. He told Dee the chairman of the board was a friend who would support his decision to terminate employees. He warned her that "if someone caused trouble for him . . . he'd drag that person down."

In March 1999, Strickland ordered Dee to secretly take a document from Marsh's desk and said, "Do not get caught." She complied, but while in Marsh's office Marsh walked in. When Strickland discovered what happened, he "scolded" her and said, "I told you not to get caught!"

In April 1999, Strickland told Dee that she should "make up stories" to hide information from Marsh. Dee stated, "My relationship with Andy is straightforward and honest, and I do not know how to lie to Andy." Strickland said, "Did I tell you to lie?" Dee replied, "Well, you did not tell me to lie. You told me to make up stories. Isn't that the same as telling a lie?" Strickland said, "Well, what are you, a Filipino?" Dee said, "Yes, a Filipino." Strickland said, "Well, it is your Filipino understanding versus mine."

Dee left work on May 4, 1999, because of Strickland's conduct. Doctor Victor Contreras diagnosed Dee as suffering from a posttraumatic stress disorder. In her deposition Dee admitted that she was able to work, continue a flower business, transport her children to school, take care of a baby, drive a car, walk, dress, sing, smile and go to PTA meetings. She admitted that she had hypertension but it was controlled by medication.

Dee went on disability leave, but offered to come back to work if Vintage would accommodate her disability by limiting her contacts with Strickland. Vintage refused and terminated Dee on August 20, 1999.

Dee sued Vintage, alleging it violated the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) by 1) harassing her on the basis of

"race [and] national origin" and refusing to accommodate her disability, 2) wrongfully terminating her, 3) breaching an implied contract which required good cause for termination, and 4) breaching the covenant of good faith and fair dealing. Vintage moved for summary judgment. Dee filed a timely opposition but shortly thereafter discovered additional evidence.

*Dee's Supplemental Evidence*

Christopher Olmstead, Dee's counsel, filed a declaration stating he was unable to file Marsh's deposition with the opposition to summary judgment. He took Marsh's deposition and, to his surprise, Marsh made admissions that were "essential" to Dee's case. Olmstead "expedited" the preparation of the transcript and attached it to a supplemental opposition he filed with the court on June 25. Marsh testified Dee was "visibly shaken" by Strickland's demands. He said Dee performed well on the job. He said Vintage needed good cause to terminate employees.

At the summary judgment hearing on June 28, Olmstead requested the court to either consider Marsh's deposition or "provide additional time for briefing on the issue." The court did not grant a continuance and did not consider Marsh's deposition. It granted summary judgment for Vintage. It stated, "One racial comment is insufficient as a matter of law to establish a hostile environment" under FEHA. It found "[t]he evidence is undisputed that plaintiff is not disabled under FEHA." It ruled there was no contract which required Vintage to have good cause before terminating Dee.

DISCUSSION

I. *Dee's Additional Evidence*

█ Dee contends the trial court erred by granting summary judgment without considering her recently discovered additional evidence. We agree.

" '[A] summary judgment is a drastic measure which deprives the losing party of trial on the merits.' " (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395 [107 Cal.Rptr.2d 270].) "To mitigate summary judgment's harshness, the statute's drafters included a provision making continuances—which are normally a matter within the broad discretion of trial courts—virtually mandated . . . ." (*Ibid.*; Code Civ. Proc., § 437c, subd. (h).) Where the opposing party submits an adequate affidavit showing that

essential facts may exist but cannot be presented timely, the court must either deny summary judgment or grant a continuance. (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633 [115 Cal.Rptr.2d 780].)

Olmstead's declaration explained why he was unable to file the deposition of Marsh within the deadline for opposing summary judgment. He stated that Marsh made admissions that were "essential" to Dee's case. Marsh's testimony was relevant, as it supported Dee on such issues as a hostile working environment and whether there was a good cause requirement to terminate Vintage employees. Olmstead acted promptly so that the deposition transcript was available to the court before the summary judgment hearing.

At the hearing, he requested the court to either consider Marsh's deposition or "provide additional time for briefing on the issue." But the court did neither. It should have granted a continuance so it could consider the additional evidence. (*Frazee v. Seely, supra*, 95 Cal.App.4th at p. 633.) Not doing so was reversible error. (*Ibid.*)

## II.   *Hostile Work Environment*

Dee contends the trial court erred because Strickland's ethnic slur combined with other evidence established a triable issue of fact on the issue of a hostile work environment. We agree.   We review an order granting summary judgment de novo to decide whether there is a triable issue of fact. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601 [50 Cal.Rptr.2d 431].)

"[California's] Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) . . . explicitly prohibits an employer from harassing an employee on the basis of race, sex or [ethnicity.]" (*Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 464 [79 Cal.Rptr.2d 33].) Harassment includes " 'epithets, derogatory comments or slurs . . . .' " (*Ibid.*) "California courts have been guided in their interpretations of FEHA by the federal court decisions interpreting Title VII" of the federal Civil Rights Act (42 U.S.C. § 2000e-2(a)(1)). (*Etter*, at p. 464.) To prove a claim under Title VII, the harassment must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " (*Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 67 [106 S.Ct. 2399, 2405, 91 L.Ed.2d 49].)

Vintage contends that the trial court correctly ruled that "[o]ne racial comment is insufficient as a matter of law to establish a hostile

environment." But "there is neither a threshold 'magic number' of harassing incidents that gives rise . . . to liability . . . nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." (*Rodgers v. Western-Southern Life Ins. Co.* (7th Cir. 1993) 12 F.3d 668, 674.)

In many cases, a single offensive act by a coemployee is not enough to establish employer liability for a hostile work environment. But where that act is committed by a supervisor, the result may be different. (*Brooks v. City of San Mateo* (9th Cir. 2000) 229 F.3d 917, 927, fn. 9.) In *Brooks*, Selvaggio, a male employee, made improper advances and touched the breast of a female employee. The Ninth Circuit Court of Appeals held that this single incident was insufficient to support a title VII claim. But it also stated, "A different question would arise if Selvaggio were Brooks' supervisor, rather than her co-worker. Because the employer cloaks the supervisor with authority, we ordinarily attribute the supervisor's conduct directly to the employer." (*Ibid.*) "Thus, a sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as to alter the conditions of employment and give rise to a hostile work environment claim." (*Ibid.*)

In other jurisdictions a single racial slur by a supervisor may also create a hostile work environment. (*Rodgers v. Western-Southern Life Ins., supra*, 12 F.3d at p. 675.) The Seventh Circuit Court of Appeals stated, "Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' . . . than the use of an [unambiguous] racial epithet . . . by a supervisor in the presence of his subordinates." (*Ibid.*)

In *Taylor v. Metzger* (1998) 152 N.J. 490, 508 [706 A.2d 685, 694] the New Jersey Supreme Court reversed a summary judgment granted to an employer in an employment discrimination case. It concluded that where a supervisor makes a single racial slur, that exacerbates the severity of the remark and is sufficient to establish a triable issue of fact. (*Id.* at pp. 504, 508.)

Here Strickland's remark that "it is your Filipino understanding versus mine" is an ethnic slur, both abusive and hostile. Dee testified it was "very demeaning." Strickland's slur followed Dee's complaint that he told her to lie. A reasonable inference is that Strickland wished to intimidate her so that she would not complain to higher management about his conduct.

A reasonable trier of fact could infer that the racial slur was not an isolated event because it explained Strickland's motivation for creating an

abusive working environment for Dee. Dee's evidence showed that Strickland called her a "bitch" and "constantly" used the word "asshole." He berated her, "harassed" her, ordered her to lie and blamed her for tasks he ordered her to perform.

Strickland warned Dee that the chairman of the board was a friend who would support his decisions. Dee left because of Strickland's conduct. His actions were stressful to her. We also note that Marsh's deposition testimony corroborates, to a significant extent, Dee's claims about an abusive working environment. He testified Strickland made unreasonable demands over "petty things" and Dee, a good worker, was "visibly shaken" by Strickland's conduct. It could infer that Strickland felt the company would not believe Dee because of her ethnicity.

Vintage contends Dee has no discriminatory discharge claim because it replaced her with a person of Hispanic origin. But Dee's claim involved discrimination based on her Filipino ancestry. Vintage did not replace Dee with someone from that ethnic group. There was a triable issue of fact.

### III.  *Disability Under FEHA**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### IV.  *At-will Employment*

Dee contends that Vintage needed good cause to terminate her employment. Vintage responds that Dee's evidence did not overcome the presumption that her employment was at will. (Lab. Code, § 2922.)

█ Whether there is an implied contract not to terminate an employee except for good cause "must be determined from the 'totality of the circumstances.'" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 337 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) We have already ruled that the court should have considered the deposition of Marsh, Dee's supervisor, as additional evidence. In that deposition Dee's counsel asked him, "[Vintage] can't just fire you for no reason. They have to have good cause to fire you; is that right?" Marsh responded "That's my belief."

The judgment is affirmed as to the trial court's ruling that Dee did not have a disability under the FEHA. The judgment is otherwise reversed and

---

*See footnote, *ante,* page 30.

remanded as to the court's ruling granting Vintage summary judgment. Costs to appellant.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied March 5, 2003, and on February 27, 2003, and March 5, 2003, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 14, 2003.