Filed 10/30/14  Polk v. Lowe's HIW CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GLENN POLK, | H039950 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 1-11-CV202042) |
| v. | |
| LOWE'S HIW, INC., | |
| Defendant and Respondent. | |

Plaintiff Glenn Polk was employed by defendant Lowe's HIW, Inc. (Lowe's), from July 2008 until he resigned in January 2011.  Following his resignation, Polk filed a lawsuit against Lowe's alleging causes of action for constructive discharge, hostile work environment, failure to prevent harassment, and intentional infliction of emotional distress.  Polk alleged that a department manager at Lowe's, Adam Bal, sent him a racially offensive text message, causing him psychological trauma.  Lowe's moved for summary judgment on all of Polk's causes of action, which the trial court granted.  Polk appealed the trial court's judgment in favor of Lowe's, arguing that the court erred in granting summary judgment on his hostile work environment claim.

For the reasons set forth below, we conclude that Polk failed to demonstrate the existence of a triable issue of material fact regarding his cause of action for a hostile work environment.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Undisputed Facts*[1]

Polk worked as an hourly at-will employee at Lowe's between July 2008 and January 2011. Polk was initially employed at a Lowe's store in Sunnyvale but was later transferred to a store in east San Jose. Bal was employed as the freight department manager for the Lowe's store in east San Jose from October 2009 to November 2010. Americo Peri was the store manager for the east San Jose store, and Aloy Nnorukam was the human resources manager. Bal did not have any overt "race problems" with Nnorukam or Peri. However, Polk said he felt a "bad vibe" from Peri and while he had a "[g]ood working relationship" with Peri, he felt that "[Peri] just didn't care for [him]."

In 2010, Polk was transferred from the store's freight department to the tools department. Polk told Nnorukam that he thought he was being transferred due to his ethnicity, which Nnorukam denied. Nnorukam told Polk he was being transferred because of his tardiness.

Polk noticed that Bal and Peri appeared to be friends and would sometimes joke with each other using crude language and profanity. Polk felt Bal and Peri avoided talking to him.

On October 19, 2010, at approximately 3:44 a.m., Polk received a text message from Bal's personal cell phone which read: "This nigga was never on time when he was on freight. Now he's in tools. He's in early every day." Bal had never made racially offensive comments to Polk before this incident. Bal apologized to Polk the same day and explained the message was not intended for him. Polk reported the text message to management and submitted a statement. Bal was sent home and was suspended pending

---

[1] Some of the evidence cited by Polk in his opening brief was objected to by Lowe's and excluded by the trial court below. Polk has not challenged the trial court's evidentiary rulings. We will therefore state the facts of the case without reference to the excluded material.

2

the outcome of the investigation.  Nnorukam spoke with Polk and Bal and concluded that Bal had accidentally sent the message to Polk.  He determined the message was inappropriate and in violation of company polices, and concluded that Bal should be terminated.  The incident was handled at the store level and was not reported to Lowe's corporate offices.  Bal was terminated by Lowe's on November 4, 2010.[2]

After the incident, Polk requested time off and a leave of absence.  Polk also asserted he felt ill after receiving the text and experienced sleepless nights, anger, anxiety, and fear.  Polk sought medical attention for his symptoms.  During his absence from work, Polk was informed that Bal had been suspended and was later told that Bal was terminated.  Accordingly, Polk and Bal never worked together at the store after the text messaging incident.  Polk voluntarily resigned in January 2011.

*Procedural History*

On May 31, 2011, Polk filed a complaint against Lowe's and Bal, alleging five causes of action:  (1) breach of contract and constructive discharge, (2) hostile work environment and harassment, (3) failure to prevent a hostile work environment, (4) intentional infliction of emotional distress, and (5) constructive discharge in violation of public policy.[3]  The causes of action for hostile work environment and intentional

---

[2] Polk argued below that Bal was allowed to resign and was not terminated.  However, the only evidence proffered by Polk to dispute the fact that Bal was terminated was a letter of resignation that the trial court deemed inadmissible.  Accordingly, we cannot rely on this document as evidence of Bal's resignation.  Furthermore, during his deposition, Nnorukam specifically stated that Bal was terminated from his position at Lowe's.

[3] Polk's complaint alleged he had received a right-to-sue letter from the California Department of Fair Employment and Housing (DFEH) on March 27, 2011.  Lowe's does not dispute that Polk has exhausted his administrative remedies by filing a complaint with the DFEH for violations of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).  (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492; Gov. Code, §§ 12960, 12965.)

infliction of emotional distress were alleged against Lowe's and Bal. The other causes of action were alleged only as to Lowe's.

Polk's complaint alleged that Lowe's and Bal subjected him to harassment based on his race, which created a hostile and abusive work environment. Polk asserted he was subjected to unwarranted racial slurs at work because he is African American. He claimed he was significantly affected by the text message referring to him as a "nigga" and considered the message an abusive personal attack that caused him to experience high blood pressure, anxiety, fear, and depression. Polk's complaint did not allege any other specific incidents of harassment.

Lowe's moved for summary judgment on May 18, 2012. In September 2012, Polk filed an opposition to the motion for summary judgment. Lowe's objected to some of Polk's submitted evidence and filed a reply brief.

On December 7, 2012, the trial court granted Lowe's motion for summary judgment, sustaining some of Lowe's evidentiary objections. The trial court entered a final judgment in favor of Lowe's on May 31, 2013, and Polk appealed.

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment under a de novo standard of review. (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1385.) Summary judgment is granted if all the moving papers show there is no triable issue of any material facts, and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Defendants are entitled to summary judgment if a necessary element of plaintiff's complaint cannot be established, or if there is a complete defense to the plaintiff's cause of action. (*Id.*, subd. (o)(2).) In reviewing a grant of summary judgment in favor of the defendant, as in this situation, we must review the entire record de novo and determine whether the defendant " 'conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there

4

a material issue of fact that requires the process of trial.' " (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1709.)

## DISCUSSION

On appeal, Polk argues that the trial court erred in granting summary judgment in favor of Lowe's regarding his cause of action for a hostile work environment based on race.[4] First, Polk claims the trial court erred in finding that the text message sent by Bal was, by itself, insufficient to sustain a cause of action for hostile work environment. Additionally, he insists that the trial court erred in failing to consider additional evidence of racial discrimination at Lowe's aside from the text message.

*Legal Principles Governing Hostile Work Environment Claims*

FEHA prohibits employers from discriminating or harassing employees on the basis of race, national origin, or ancestry. (Gov. Code, § 12940, subd. (g); *Aguilar v. Avis Rent a Car System, Inc.* (1999) 21 Cal.4th 121, 129.) The federal counterpart of the FEHA, title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.), also states that harassment in the workplace may give rise to a cause of action for employment discrimination. Title VII cases can be considered when interpreting the scope of the FEHA. (*Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 464 (*Etter*).)

"Harassment includes ' "epithets, derogatory comments or slurs . . . ." ' " (*Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30, 35 (*Dee*).) Not all workplace harassment will give rise to a violation of the FEHA or Title VII. The behavior must result in a hostile work environment that is " ' " 'sufficiently severe or pervasive to alter the conditions of the victim's employment.' " ' " (*Etter*, *supra*, 67 Cal.App.4th at p. 465,

---

[4] In his opening brief, Polk states that one of the issues raised on appeal is whether he was constructively discharged. However, Polk never develops this argument in his brief. " '[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant's . . . issue as waived.' " (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708.) Therefore, we find Polk has waived this argument on appeal.

citing *Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, 517.)  Errant remarks or sporadic comments may not be sufficient to create a hostile work environment.  (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 809-810.)  However, " 'there is neither a threshold "magic number" of harassing incidents that gives rise . . . to liability . . . nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.' " (*Dee*, *supra*, at p. 36.)

"[H]arassment must satisfy an objective and a subjective standard."  (*Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 588.)  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment . . . ."  (*Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21-22.)  Determining whether an environment is hostile requires looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  (*Id.* at p. 23.)

Put another way, "[t]he plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that [he] was actually offended."  (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609-610, fn. omitted.)  "The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff found the environment abusive.  But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required."  (*Harris v. Forklift Systems, Inc. supra*, 510 U.S. at p. 23.)  Whether the offensive statement was directed at the plaintiff, or was directed at others but

6

heard by the plaintiff, is also relevant. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 285 (*Lyle*).)

"An employer is strictly liable for harassment committed by its agents or supervisors, but is liable for harassment committed by its other employees only if it fails to take immediate and appropriate corrective action when reasonably made aware of the situation." (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1377.)

Summary judgment can be granted on a hostile work environment cause of action if a reasonable trier of fact could not find, based on the plaintiff's factual showing, that the harassing conduct was sufficiently severe or pervasive to create a hostile work environment. (*Lyle*, *supra*, 38 Cal.4th at p. 291.)

*Polk's Hostile Work Environment Claim*

The undisputed facts regarding Polk's text message incident are as follows: Polk never had any overt "race problems" with any other employees at Lowe's. Prior to his receipt of the text message, Polk did not have plainly obvious problems with Bal; Bal had never used a racial slur against him before. Bal apologized to Polk after he sent the offensive text message. Polk reported the incident to Nnorukam, and Bal was suspended and later terminated. Polk later said he felt ill and fearful after receiving the text message, leading to his voluntary resignation in January 2011.

Polk acknowledges that " 'the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.' [Citations.] If a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe." (*Brooks v. City of San Mateo* (9th Cir. 2000) 229 F.3d 917, 926 (*Brooks*).) Polk argues that the racial remark made by Bal, who

7

was his supervisor, coupled with the physical and psychological damage he suffered, was severe enough to support a hostile work environment claim on its own.[5]

Polk distinguishes between a single offensive act by a coemployee and a single offensive act by a supervisor like Bal. Polk maintains that a single racial epithet made by a supervisor has "such a powerful and violent connotation that just one instance of that remark is 'sufficiently severe' to create a hostile environment," citing to *Dee*, *supra*, 106 Cal.App.4th 30. *Dee*, however, does not stand for the proposition that a single racial slur is sufficient to create a triable issue of fact as to the existence of a hostile work environment.

In *Dee*, the appellate court concluded that "[i]n many cases, a single offensive act by a coemployee is not enough to establish employer liability for a hostile work environment. But where that act is committed by a supervisor, the result may be different." (*Dee*, *supra*, 106 Cal.App.4th at p. 36.) *Dee* noted that in *Brooks*, *supra*, 229 F.3d at page 927, footnote 9, the federal appellate court reasoned that " 'a sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as to alter the conditions of employment and give rise to a hostile work environment claim.' " (*Dee*, *supra*, at p. 36.)

---

[5] Lowe's reply brief argues that Polk is essentially asserting a new theory of liability on appeal. We disagree; the harm to an employee's psychological welfare is a factor to be considered and is relevant to the analysis of whether the conduct alleged constitutes a hostile work environment claim due to race. (*Harris v. Forklift Systems, Inc.*, *supra*, 510 U.S. at p. 23.) Polk is not asserting that Lowe's is somehow liable under a different theory of liability. Additionally, Polk's complaint specifically set forth the allegation that the text message from Bal caused Polk to become anxious, fearful, and depressed, and adversely impacted his blood pressure.

Lowe's also argues that there is no direct evidence that Bal was Polk's supervisor. However, this fact appears to be undisputed below. Polk asserted in a deposition that Bal was his direct supervisor at Lowe's, and alleged Bal was his supervisor in his complaint. Lowe's did not present evidence in contravention to the trial court.

*Dee* further stated that in other jurisdictions, "a single racial slur by a supervisor may also create a hostile work environment" (*Dee*, *supra*, 106 Cal.App.4th at p. 36), citing to *Rodgers v. Western-Southern Life Ins. Co.* (7th Cir. 1993) 12 F.3d 668, 675 (*Rodgers*). In *Rodgers*, the Seventh Circuit concluded that the supervisor's use of an unambiguous racial epithet in the presence of his subordinates "impacts the work environment far more severely than use by co-equals." (*Rodgers*, *supra*, at p. 675.) The *Rodgers* court reasoned that "[p]erhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' " than the use of a racial slur by a supervisor in the presence of his subordinates. (*Ibid*.) However, *Rodgers* differs from *Dee* and the present case in several respects. Procedurally, *Rodgers* did not arise from the grant of summary judgment; the appeal arose following a bench trial where the district court found the existence of a hostile work environment. (*Id*. at p. 670.) Factually, the supervisor in *Rodgers* engaged in several isolated incidents that contributed to the finding by the trial court that there was a hostile work environment.[6] (*Id*. at pp. 675-676.) More accurately, *Rodgers* concluded that "[i]n examining the 'totality of circumstances' giving rise to [the plaintiff's] action[s], the district court properly considered the cumulative weight of [the supervisor's] several 'isolated' racial comments." (*Id*. at p. 675.)

Additionally, contrary to Polk's assertion, *Dee* itself did not hold that a supervisor's single isolated racial slur is sufficient to create a triable issue regarding the existence of a hostile work environment. The *Dee* court concluded that a supervisor's single racial slur *when coupled with other evidence*, such as where the supervisor had

---

[6] The supervisor in *Rodgers* used the word " 'nigger' " twice in the presence of the plaintiff, made a statement that " '[y]ou black guys are too fucking dumb to be insurance agents' " (*Rodgers*, *supra*, 12 F.3d at p. 675), told the plaintiff that he was advised not to hire more African American agents, remarked to the plaintiff that he " 'must think [he's] back in Arkansas chasing jack rabbits,' " and used the nickname " 'Rabbit' " for the plaintiff. (*Id*. at p. 676.)

also instructed the employee to lie, used foul language against her, and berated her in the workplace, created a triable issue.  (*Dee*, *supra*, 106 Cal.App.4th at pp. 36-37.)

Polk claims that the *Dee* court sought additional evidence of racial harassment because it sought to establish the supervisor's remark as "pervasive" since the racial slur was not "unambiguous."  In this respect, Polk has misread the analysis set forth in *Dee*.  The *Dee* court concluded that the supervisor's remark to the employee was "an ethnic slur, both abusive and hostile."  (*Dee*, *supra*, 106 Cal.App.4th at p. 36.)  The court reasoned the additional evidence that the supervisor had abused and belittled Dee would allow a reasonable trier of fact to conclude that the racial slur was not an isolated event. (*Id*. at pp. 36-37.)  Unlike *Dee*, Polk has not presented any other incidents where Bal abused or used foul language against him.

Furthermore, many courts have affirmed grants of summary judgment when the incidents of racial harassment are isolated, holding that single incidents cannot be found sufficiently severe enough to sustain a cause of action for hostile work environment.  In *Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634 (*Vasquez*), the federal appellate court affirmed the grant of summary judgment in favor of the employer with respect to the plaintiff's claim of hostile work environment under Title VII.  In *Vasquez*, the plaintiff's supervisor made two racially derogatory statements to the plaintiff:  that the plaintiff had " 'a typical Hispanic macho attitude' " and that " 'Hispanics do good in the field.' "  (*Vasquez*, *supra*, at p. 643.)  The federal appellate court concluded that the two racially related epithets, though offensive, did not create a triable issue of fact as to severity or pervasiveness.  (*Id*. at p. 644.)

Similarly, federal district courts have held that "isolated instances of offensive conduct are insufficient to create a triable issue of fact on a hostile work environment claim."  (*Henry v. Regents of the Univ*. (N.D.Cal., Feb. 24, 2014) 2014 U.S. Dist. Lexis 23888, p. *48.)  For example, a district court granted summary judgment in favor of the employer even when the plaintiff alleged that his supervisor called him a " 'nigger' " on

one occasion, criticized him constantly, and called him too slow and fat. (*Alvarado v. Fedex Corp.* (N.D.Cal., Mar. 10, 2006) 2006 U.S. Dist. Lexis 9973, pp. *47-*50.) Another district court found that a supervisor's use of the derogatory terms "bitch" and "nigger" on two separate occasions, possibly directed to the plaintiff, and the supervisor's occasional derogatory comments in front of the plaintiff's coemployees that the plaintiff was never going to be promoted and was not going anywhere, was insufficient for a reasonable jury to find, subjectively and objectively, the existence of a hostile work environment. (*Hercules v. Dept. of Homeland Sec.* (N.D.Cal., Apr. 29, 2008, No. C-07-0270 SBA) 2008 U.S. Dist. Lexis 35037, pp. *62-*65.)

In an analogous case concerning a hostile work environment due to gender discrimination, the federal appellate court in *Kortan v. California Youth Authority* (9th Cir. 2000) 217 F.3d 1104 (*Kortan*) held that isolated statements made by a supervisor may not give rise to a triable issue of material fact. In *Kortan*, a female employee filed suit against her employer after a supervisor made several offensive statements against women, calling a former female employee a " 'castrating bitch,' " " 'madonna,' " and " 'regina.' " (*Id*. at p. 1110.) Kortan argued that whether a reasonable woman would have found these statements abusive was an issue of fact for the jury to decide. However, the federal appellate court affirmed summary judgment for the employer after considering the circumstances surrounding the statements, including the fact that the offensive conduct was concentrated on one occasion. The federal court therefore held that there was no triable issue as to whether the conduct was severe or abusive enough to create a hostile work environment.[7] (*Kortan*, *supra*, at p. 1111.)

---

[7] Similarly, in sexual harassment hostile work environment claims, a "single incident must be severe in the extreme and generally must include either physical violence or the threat thereof" in order to create a triable issue of material fact. (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 151.) Indeed, courts have found that "even unwelcome sexual touching is insufficient to constitute severe pervasive (continued)

11

Despite the lack of cases to support his proposition, Polk insists that the federal appellate court in *Brooks* held that a single act by a supervisor against an employee may be "sufficiently severe so as to alter the conditions of employment and give rise to a hostile work environment claim." (*Brooks*, *supra*, 229 F.3d at p. 927, fn. 9.)  This footnote in *Brooks*, however, is merely dicta and was not its holding; *Brooks* concerned the alleged sexual harassment committed by a coemployee against another employee, not a supervisor against an employee.  "The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning." (*McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226.)  Aside from the dicta in *Brooks*, Polk has not cited to and we have not found any cases concluding that a single racial epithet from a supervisor can be severe enough to constitute a hostile work environment.

Here, Bal's reference to Polk as a "nigga" is indisputably an ethnic slur that is abusive and hostile.  "It is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination." (*McGinest v. GTE Service Corp.* (9th Cir. 2004) 360 F.3d 1103, 1116.)  However, based on the undisputed facts, the use of the racial slur was an isolated event.[8] It is also undisputed that Bal apologized after Polk read the text, cried while apologizing, and never worked with Polk again.

harassment when the incidents are isolated and there is no violence or threat of violence." (*Id.* at p. 153.)

[8] In his opposition to the motion for summary judgment, Polk alleged that there were other incidents of racial discrimination and evidence that other employees had used racially offensive epithets in the break room at Lowe's.  However, these facts were not pleaded in the complaint.  Furthermore, the evidentiary bases for these assertions were deemed inadmissible by the trial court.  Polk did not appeal these evidentiary rulings on appeal and we are therefore obligated to exclude the items on our review.

12

In his deposition, Polk stated he felt ill after the incident and suffered severe psychological harm. However, this evidence goes toward the subjective, not the objective, component of a claim of harassment. Based on the totality of the circumstances, we find that there is no reasonable trier of fact that could conclude the isolated text message was severe enough to create an objectively abusive or hostile work environment for a reasonable employee of Polk's ethnicity. (*Lyle*, *supra*, 38 Cal.4th at p. 291.) "Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment . . . ." (*McGinest v. GTE Service Corp.*, *supra*, 360 F.3d at p. 1113.)

Polk maintains that it can be inferred that Bal intended to send the racially offensive text message to Peri, the store manager, which would have drastically altered his employment at Lowe's. However, this assertion is based merely on Polk's observation that Bal and Peri were friendly toward each other, and his belief that someone in Peri's role would be concerned with the contents of the text message. Such speculation cannot create a triable issue. (*Joseph E. Di Loreto*, *Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161 ["When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork."].)

*Other Evidence of Harassment*

In the alternative, Polk contends that there is ample evidence in the record of other acts of harassment (changes to his schedule, assignment to menial tasks, and Bal and Peri's demeanor toward him) that support a hostile work environment claim. He argues the trial court erred in failing to consider these additional incidents. Indeed, in its order granting summary judgment the trial court noted that these assertions were outside the scope of the pleadings.

It appears the trial court correctly determined that Polk's additional factual assertions were outside the scope of the pleadings, because he did not allege these

13

additional instances of supposed racial harassment in his complaint. "[A] 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' [Citation.] 'To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

Polk's complaint only alleged harassment on the basis that he was subjected to unwanted racial slurs at work, specifically the text message sent by Bal. He did not allege Peri treated him adversely or Bal harassed him in any other way. When moving for summary judgment Lowe's was only required to address the allegations contained in the complaint, which it did by demonstrating that a single incident of harassment cannot be severe enough to sustain a cause of action for a hostile work environment.

Furthermore, even if we were to consider Polk's additional allegations, we would still conclude that his cause of action for a hostile work environment fails. Many of his supplementary factual assertions rely on evidence that we cannot consider because they were excluded by the trial court below (his alleged assignment to petty jobs and menial tasks), and Polk does not appeal these evidentiary rulings.[9] (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637.)

Additionally, some of his arguments are unsupported. There is no evidence that any scheduling change made by Lowe's was the result of racial harassment. " '[C]ommonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments . . . and the like, do not come

---

[9] These assertions were solely supported by a paragraph in his declaration that the trial court deemed inadmissible.

14

within the meaning of harassment.' " (*Reno v. Baird* (1998) 18 Cal.4th 640, 646-647.) And, Polk's allegation that Bal and Peri were not friendly toward him is also not actionable.  "[A]n employer cannot force employees to socialize with one another . . . ." (*Brooks*, *supra*, 229 F.3d at p. 929.)

Accordingly, after considering the totality of the circumstances, we conclude a reasonable jury would not be able to find, based on the undisputed facts, that the harassment alleged by Polk was sufficiently severe or pervasive to constitute a hostile work environment due to race.

## DISPOSITION

The judgment is affirmed.  Lowe's is entitled to its costs on appeal.

_____
                Premo, J.

WE CONCUR:


_____
      Rushing, P.J.



_____
      Elia, J.