Filed 11/13/14  Torres v. County of San Joaquin CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JORGE R. TORRES, | |
| Plaintiff and Appellant, | C070641 |
| v. | (Super. Ct. No. CV030163) |
| COUNTY OF SAN JOAQUIN et al., | |
| Defendants and Respondents. | |

Defendant County of San Joaquin (County) hired plaintiff Jorge R. Torres in 1998 to work at juvenile hall.  Floyd Banks directly supervised Torres for a few months in 2005.  In a first amended complaint, Torres alleged, among other things, that County and Banks engaged in discrimination, harassment and retaliation.

County and Banks filed a motion for summary judgment and/or summary adjudication in 2008; the trial court granted summary adjudication on causes of action not

1

at issue here. Three years later, the trial court granted a second motion for summary judgment filed by County and Banks.

Torres now contends (1) the trial court violated Code of Civil Procedure sections 437c and 1008 when it considered the second motion for summary judgment, and (2) summary judgment was not warranted because there are triable issues of fact.

The contentions on appeal lack merit. We will affirm the judgment.

BACKGROUND

Torres worked for many years as a juvenile detention officer (JDO) for County. The JDO position is the entry level job at juvenile hall; there were also unit supervisors and facility supervisors. Banks was a facility supervisor, two levels above Torres. In 2005, Torres was responsible for supervising a unit housing up to 30 juveniles during the graveyard shift, 10:00 p.m. to 6:00 a.m. Torres normally reported to a supervisor who reported to Banks, but for a period of four to six months in 2005, Torres reported directly to Banks.

Torres was at the top of his pay scale during the relevant time period and received satisfactory or good performance evaluations throughout his employment. He chose not to seek promotion and he was never suspended, demoted or terminated.

In May 2005, Torres and nine other JDO's lodged an administrative grievance against Banks. Among other things, the grievance said Banks ordered safety checks every 13 minutes instead of every 15 minutes as required by written policy; he did not follow protocol for assigning mandatory overtime; and he would not let them watch television or read books between 15-minute room checks even though there was no written policy prohibiting those activities. The workers described Banks as "vindictive, manipulative, unprofessional, and demeaning." The complaining workers included various races and ethnic groups, including African-American, Hispanic, Asian and Caucasian.

2

Deputy Chief Probation Officer Emi Fujii and Assistant Deputy Chief Probation Officer Michael Martinez met with the graveyard staff to discuss the issues raised in the grievance. They explained the rationale for the 13-minute safety-check rule. Banks was responsible for conducting rounds in the seven units at juvenile hall. He began his shift by downloading information from the electronic wand carried by each JDO. State regulations required a safety check of each detained youth at 15-minute intervals. As the JDO's checked each youth, the JDO's would swipe their electronic wand at each room. Because printouts generated from the electronic wands showed intervals of up to 18 minutes, Martinez issued a memorandum that the JDO's were to set an alarm timer at 13 minutes so the safety checks could be completed within the required 15 minutes. Banks enforced that directive.

Regarding the grievance that Banks did not let the JDO's watch television or read books between safety checks, Martinez confirmed that JDO's should not read books or watch television during their work time because they had a duty to remain alert and focused on safety and security. In his declaration in support of summary judgment, Martinez said Banks was "proactive and assertive in enforcing Department rules and policies" and treated all employees the same regardless of their race or ethnicity.

In June 2005, Torres was at his desk drinking Coke from a glass bottle. When Banks told him not to bring glass containers into the detention units, Torres objected that there was no policy prohibiting glass containers. Banks believed glass bottles represented a safety risk because incarcerated youths could grab them, break them and use them as weapons. A policy against glass bottles was subsequently instituted in August 2005. Torres was so upset by the glass bottle incident that he went home early with an aching upper chest and shoulder, a headache, high blood pressure and shaking hands. He filed an accident/injury/incident report claiming the glass bottle prohibition was "unethical" and retaliatory.

In his first amended complaint, Torres alleged four causes of action based on age and Hispanic (Mexican) ethnicity: (1) discrimination by County, (2) retaliation by Banks and County, (3) harassment by Banks and County, and (4) deprivation of federal civil rights by Banks and County. County and Banks moved for summary judgment or, in the alternative, summary adjudication in April 2008. The trial court granted summary adjudication for Banks on all but the harassment cause of action, and for the County on the age-based claims but not on the ethnicity-based claims. The federal claims were dismissed because Torres did not identify a policy or custom causing a constitutional injury.

The parties stipulated to a continuance of the trial date because the attorney for Torres had a calendar conflict. As part of the stipulation, the parties agreed that County and Banks could file a second motion for summary judgment.

County and Banks filed a second motion for summary judgment, asserting that it was justified by the stipulation and also by a change in the law. Aside from the new case authorities, however, the second motion essentially repeated the facts and arguments presented in the first motion. The trial court noted that according to Torres, the motions were nearly identical and thus the second motion was barred by Code of Civil Procedure section 437c, subdivision (f)(2). But the trial court found that Torres waived the prohibition by stipulating to the second motion. In addition, the trial court was satisfied that the new case authorities justified the second motion. Torres filed opposition papers but did not request a hearing and none was held. The trial court granted the second summary judgment motion in favor of County and Banks.

Additional facts are included in the discussion as relevant to the contentions on appeal.

STANDARD OF REVIEW

We review a trial court's decision to consider a second summary judgment motion for abuse of discretion. (*Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1812.) We

4

review de novo an order granting summary judgment, determining for each cause of action whether the defendant has "conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial . . . ."  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

## DISCUSSION

### I

Torres contends the trial court violated Code of Civil Procedure sections 437c and 1008 when it considered the second motion for summary judgment.

Code of Civil Procedure section 437c, subdivision (f)(2) provides in relevant part: "a party may not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion."  Code of Civil Procedure section 1008 has similar requirements for renewed motions but, in the context of a second motion for summary judgment, it does not merit independent analysis.  (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1099 [both statutes require new facts or law].)

According to the trial court, the parties expressly stipulated that County and Banks could file a second summary judgment motion, implicitly waiving the bar to a second motion set forth in Code of Civil Procedure section 437c, subdivision (f)(2).  (See *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [client is bound by attorney's stipulation on procedural matters].)

The trial court also determined that the second motion was justified by new case law.  Torres had opposed the first motion by presenting three declarations from other employees who claimed that they had also been mistreated by Banks.  In the second motion, Banks and County cited a subsequently decided case, *Johnson v. United*

5

*Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740 (*Johnson*), which analyzed so-called " 'me too' " declarations. (*Johnson, supra*, 173 Cal.App.4th at pp. 763-767.) The court in *Johnson* said the relevance of " 'me too' " evidence depends on many factors, " 'including how closely related the evidence is to plaintiff's circumstances and theory of the case.' " (*Id.* at p. 767, quoting *Sprint/United Management Co. v. Mendelsohn* (2008) 552 U.S. 379, 388 [170 L.Ed.2d 1, 9].) County and Banks argued in their second motion that the declarations from coworkers did not meet the evidentiary standards described in *Johnson*.

Regarding the harassment cause of action against Banks, the second motion cited *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686. In that case, the California Supreme Court said that " ' "authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment." ' " (*Id.* at p. 706, fn. & italics omitted.) *Roby* developed principles set out in prior cases.

Based on the foregoing, we conclude the trial court did not violate Code of Civil Procedure section 437c in considering the second motion, and it did not abuse its discretion in determining that the new case authority was "a change of law supporting the issues reasserted." (Code Civ. Proc., § 437c, subd. (f)(2); see also *Patterson v. Sacramento City Unified School Dist.* (2007) 155 Cal.App.4th 821, 827 [no procedural bar to second summary judgment motion when there has been a change in the law].) Torres's insistence that there be newly discovered *facts* to justify the second motion is misplaced. Citation to case law published after initial denial of summary judgment may be an adequate reason for hearing a second motion. (*De La Pena v. Wolfe* (1986) 177 Cal.App.3d 481, 485, superseded by statute on other grounds as stated in *Pender v. Radin, supra*, 23 Cal.App.4th at p. 1811, fn. 2.)

II

Torres next claims summary judgment was not warranted because there are triable issues of fact. He misstates the law, however, contending that "summary judgment lies

6

only where the opponent has *no case at all* (not merely a weak case)"[1] and that, on summary judgment, a trial court's "sole function is issue finding."[2]  The purpose of a motion for summary judgment is to cut through the pleadings to determine whether trial is necessary.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.)  The moving party establishes a right to judgment as a matter of law by submitting evidence showing there is no triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (c).)  In an action like this one asserting violations of the Fair Employment and Housing Act (FEHA), Government Code sections 12940 et seq., once a defendant employer shows the absence of an essential element of a cause of action, the plaintiff must present evidence showing a triable issue of material fact.  (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 603.)  "An issue of fact is not created by speculation, conjecture, imagination, or guesswork; it can be created only by a conflict in the evidence submitted to the trial court in support of and in opposition to the motion."  (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)

After the first motion, discrimination, harassment and retaliation causes of action remained against County, and a harassment cause of action remained against Banks.  We address each cause of action in turn.

---

[1]  Torres cites *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215, for this proposition.  The issue in *24 Hour Fitness* was enforceability of an arbitration agreement; it did not alter the statutory rules for summary judgment, nor did it distinguish a "weak case" from "no case at all."

[2]  Torres cites *Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 55, for this proposition, but the source of the quotation was an unpersuasive appellate brief; the trial court determined that an inconsistency between a written policy and an equivocal deposition answer did not create a triable issue of fact, and the appellate court agreed.  (*Id*. at pp. 56-58.)

A

Beginning with the discrimination cause of action against County, it is unlawful for an employer, because of a protected classification, to discriminate against the person "in compensation or in terms, conditions, or privileges of employment." (Gov. Code, § 12940, subd. (a).) A claim asserting a violation of this provision is a disparate treatment claim. (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 979 (*McCaskey*).) The cause of action includes the following elements: (1) the employee is a member of a class protected by the statute, (2) the employer harbored discriminatory animus toward members of the protected class, (3) the employee suffered an adverse employment action, (4) there was a causal link between the discriminatory animus and the adverse employment action, and (5) there was a causal link between the adverse employment action and damages. (*Ibid.*)

In the second motion, County argued, among other things, that there was no adverse employment action. Although various actions may be adverse actions, such as transfers, demotions and negative performance evaluations, "commonplace indignities typical of the workplace" are not adverse employment actions. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1060 (*Yanowitz*).)

County presented undisputed evidence that Torres was never demoted, suspended or terminated and never received a pay cut as a result of disciplinary action. In addition, he was never denied a promotion and was never formally disciplined by Banks. County met its initial burden to show the absence of an adverse employment action and the burden shifted to Torres to proffer evidence of a triable issue of material fact. (See *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 853 [shifting burden of proof].)

Instead of pointing to such evidence, Torres merely quoted from *Yanowitz, supra,* 36 Cal.4th 1028, stating in conclusory fashion: "Clearly the collective actions of Banks constitutes an adverse employment action which materially affected the terms and conditions of Torres' employment." Torres did not meet his burden.

8

Banks had expectations for Torres and the other graveyard shift workers that clearly annoyed them; they had to do safety rounds more frequently and were prevented from watching television, reading books and bringing glass containers into the work station. As the trial court noted, quoting *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386, " ' "[W]orkplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." ' " The evidence presented by Torres regarding workplace demands did not establish a triable issue as to whether he was subjected to an adverse employment action.[3]

Because the second motion negated an essential element of the cause of action for discrimination, summary adjudication was appropriate.

B

Turning next to the retaliation cause of action, it is unlawful for an employer to take an adverse employment action against an employee because the employee engaged in a protected activity, such as complaining about or opposing unlawful practices. (Gov. Code, § 12940, subd. (h); *McCaskey, supra,* 189 Cal.App.4th at p. 987.) The prima facie elements of the cause of action are as follows: (1) that the employee engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's adverse action. (*Yanowitz, supra,* 36 Cal.4th at p. 1042.)

---

[3] The trial court also said the evidence showed that Banks did not engage in disparate treatment, even if the treatment was "inconvenient, irritating, unpleasant, or annoying." Torres claims the trial court must have "simply weighed the evidence and determine[d] whose version is more likely true." We disagree. Torres alleged ways in which Banks was critical or wrong in enforcing workplace policies, but the trial court said the evidence produced by Torres established that Banks made his demands on "employees of every color."

The trial court found that Torres's opposition to summary judgment did not prove that Torres engaged in any protected activity, and failed to address the absence of an adverse employment action. The trial court further observed that, even if the grievance filed by the graveyard JDO's in late May was a protected activity, Torres alleged that the retaliation began in February, so there could have been no causal connection.

The only evidence cited by Torres in support of his retaliation cause of action was that he had been "forced to engage a psychologist to treat and care for him so that he could continue his employment." According to his doctor, "the required psychiatric care was necessary and related to inappropriate harassment on the job." The psychologist's opinion, however, did not create a triable issue of material fact as to whether Torres engaged in protected activity or suffered an adverse employment action. Torres simply quoted the psychologist as saying, "Mr. Torres alleges possible retaliation following the group complaint in the form of increased scrutiny, greater silence on the part of the supervisor while being observed, and a general attitude change that Mr. Torres perceived . . . ."

The trial court did not rule on County's written objection that the doctor's opinion was inadmissible hearsay and an impermissible legal conclusion; it did not even mention the psychologist in its decision. Nonetheless, we address the evidence because it was the only evidence Torres submitted in support of the retaliation cause of action.

Although the trial court did not rule on the objection, it was preserved. (*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 526.) A summary judgment motion must be decided on admissible evidence; a declaration that is not based on personal knowledge, or that states legal conclusions without evidentiary facts, must be disregarded. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1119-1120.) Because the psychologist's statements were from an unauthenticated medical report and were not based on personal knowledge, they were inadmissible hearsay. (Evid. Code, § 1200.)

10

Torres did not present admissible evidence that he was subjected to an adverse employment action in retaliation for protected activity.  Summary adjudication was appropriate.

C

We next address the harassment causes of action against County and Banks.  It is unlawful to harass an employee based on a protected classification.  (Gov. Code, § 12940, subd. (j)(1).)  To state a prima facie case of harassment, an individual must prove: (1) he was member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on the protected classification; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile or offensive work environment; and (5) the employer is liable for the harassment.  (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876.)

In their second motion, Banks and County said Torres could not establish that the alleged harassment interfered with his work performance, i.e., that it was sufficiently severe or pervasive to constitute actionable harassment.  County and Banks argued that except for one comment by Banks in which he said, " 'That's what I would expect from you,' " the alleged harassment involved Banks enforcing workplace policies.  In *Reno v. Baird* (1998) 18 Cal.4th 640, the California Supreme Court explained that harassment is a type of conduct outside the scope of a supervisor's necessary job performance.  (*Id*. at pp. 645-646.)

In addition to the evidence we have already described, Torres also offered the coworker declarations in support of his harassment causes of action.  One declarant said Banks repeatedly asked about her medical condition following a workplace injury, claiming that he "went out of his way to foster a hostile working environment by harassing persons of Hispanic ethnicity through the use of false representations and questioning job performance directed to those employees."  Another declarant said Banks questioned her about her telephone calls until a superior told him to allow her to do her

11

job without bothering her; she also said Banks "went out of his way to discriminate and harass persons like myself of Hispanic ethnicity." A third declarant said she suffered a stroke and aneurism because Banks was "questioning [her] about everything [she] did" and she believed "[his] discriminatory and harassing conduct was only directed to persons of Hispanic ethnicity."

The evidence presented by Torres was inadequate to make a prima facie case of harassment. Torres did not present evidence of slurs or other indicia of a work environment that was more hostile for one ethnic group than another. The comment attributed to Banks -- "That's what I would expect from you" -- did not refer to race or ethnicity. A plaintiff's subjective belief about what a comment meant does not create a triable issue of material fact. (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) In any event, it was an isolated incident insufficient to support an actionable claim of harassment. (*Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 464.) Torres argues the trial court improperly weighed evidence or tested credibility when it construed Banks's alleged conduct as "minor" or "relatively trivial." But Torres failed in his burden to present evidence of severe or pervasive hostile conduct outside the scope of Banks's authorized supervisory duties.

Because Torres did not present evidence sufficient to establish a triable issue of material fact, the trial court properly granted the second motion on the harassment causes of action.

12

Each cause of action having been appropriately adjudicated, summary judgment was warranted as a matter of law.

DISPOSITION

The judgment is affirmed.


       MAURO       , Acting P. J.


We concur:


       MURRAY       , J.


       HOCH       , J.