Filed 3/9/15  Jackson v. J.C. Penney CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANTHONY D. JACKSON, | B256955 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC494818) |
| v. | |
| J.C. PENNEY CORPORATION, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Anthony D. Jackson, in pro. per., for Plaintiff and Appellant.

Lisa Abram; Call & Jensen, Scott P. Shaw, John T. Egley and Melinda Evans for Defendant and Respondent.

* * * * * *

Plaintiff Anthony D. Jackson appeals from a judgment of dismissal after the court granted the summary judgment motion of his former employer, defendant J.C. Penney Corporation (J.C. Penney). We affirm.

**FACTS**

J.C. Penney employed Jackson from March 2007 to August 2012. In 2007 and 2008, Barbara Livingston managed the Lakewood J.C. Penney store where Jackson worked. Jackson testified that in 2008, Livingston told him he was not going to get a supervisor position and said, "You blacks don't have the capability to lead and you don't have the aptitude to become a supervisor."

Nevertheless, within a month of Livingston's comment, J.C. Penney promoted Jackson to supervisor of the men's department. Livingston was still manager at the time. On February 25, 2010, Jackson received a performance review. Jackson's manager, Alexandra Garcia, gave him a rating of "below expectations" in a number of categories. Garcia advised Jackson that she was placing him on a performance improvement plan (PIP) that would be in effect through August 2010. Jackson signed the review. After the performance review meeting, Jackson was standing at the nearby desk of the assistant store manager looking at his evaluation on the computer. He heard Garcia and Livingston in the hallway; Livingston asked Garcia if Jackson had signed the review. He thinks Garcia may have answered nonverbally, and he testified he then heard Livingston say, "I told you that ['n' word] wouldn't stand up for himself."

Livingston retired in May 2010. While he heard the two comments described above, Jackson never heard Livingston make any other race-based comments. Jackson proffered no evidence of anyone else at the store making race-based comments to or about him.

Between April and August 2011, Jackson's supervisors and managers repeatedly advised him that he was failing to satisfactorily perform the duties of his position. They documented incidents on April 1, May 20, June 9, June 28, and August 4, 2011. On August 9, 2011, store manager Jan Whittaker advised Jackson that she was placing him on another PIP, based on his last six months' performance. He asked what would happen

2

if he did not meet the PIP criteria; she responded that he could lose his job. She advised him there was an open position for a commissioned sales associate in the shoe department and offered it to him as an alternative to the PIP. After a few days of consideration, Jackson accepted the sales position in the shoe department.

On or about October 31, 2011, Jackson filed a charge of discrimination with the Equal Employment Opportunity Commission and the Department of Fair Employment and Housing (DFEH). He alleged he had been demoted from a supervisor to a sales associate and had been discriminated against based on his race and sex. On January 25, 2012, he filed an amended charge of discrimination adding allegations about Livingston's comments in 2008 and February 2010. Jackson acknowledged he had never before told anyone at J.C. Penney about Livingston's comments. Assuming the company received a copy of his amended charge, that would be the first time J.C. Penney learned of the comments.

Jackson was aware that 2012 was a difficult year financially for J.C. Penney. In or around May 2012, many of his coworkers were laid off, including several of his managers or supervisors. He was not laid off, but he resigned effective August 6, 2012.

## PROCEDURAL HISTORY

Jackson filed the complaint in this matter in October 2012, and later filed a first amended complaint. He alleged causes of action under the Fair Employment and Housing Act (FEHA) for race and gender discrimination; failure to prevent discrimination; racial harassment; and (constructive) wrongful discharge in violation of public policy.[1]

J.C. Penney advanced a number of arguments in its summary judgment motion. First, it argued the causes of action for race and gender discrimination and harassment were time-barred to the extent they were based on Livingston's two comments. The last

---

[1]     The record on appeal does not contain a copy of the complaint or the first amended complaint. We deduce this summary of the causes of action from statements in J.C. Penney's summary judgment papers.

3

one occurred in February 2010, and Jackson did not file his charge of discrimination until October 31, 2011, well after the one-year limitations period for filing administrative complaints. (*Trovato v. Beckman Coulter, Inc.* (2011) 192 Cal.App.4th 319, 323.) Even that original charge did not identify Livingston's comments as a reason for the complaint; it was not until January 2012, that he filed an amended charge identifying Livingston's comments.

Second, J.C. Penney argued Jackson could not establish a prima facie case for race or gender discrimination. The elements of the prima facie case are "that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.) Beyond Livingston's two comments, Jackson alleged he was subjected to unfair criticism of his work, unfairly demoted to sales associate in the shoe department, and constructively terminated in August 2012. J.C. Penney asserted Jackson had no evidence of circumstances suggesting discriminatory motive for anyone besides Livingston. He acknowledged no one but her made race-based comments to him, and after she retired, no one showed racial animus toward him. Also, he had absolutely no evidence that Livingston or anyone else treated him differently because he was male.

Third, J.C. Penney argued even if Jackson established a prima facie case of discrimination, it had a legitimate, nondiscriminatory reason for the adverse employment actions he alleged. (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at pp. 355-356 [if the plaintiff establishes a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination with evidence that it acted for legitimate, nondiscriminatory reasons].) J.C. Penney maintained that Jackson's managers counseled him numerous times for failing to adequately perform his responsibilities as a supervisor, and it was because of his poor performance that he was placed on PIP's and offered the sales associate position as an alternative. Jackson could not show his poor performance ratings were a pretext.

4

Fourth, J.C. Penney argued the cause of action for failure to prevent discrimination could not stand because Jackson could not prove the predicate discrimination. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289.) Further, the undisputed evidence showed J.C. Penney had clear policies in place against discrimination and to prevent discrimination. Jackson was aware of these policies, and yet it was undisputed he never reported discrimination to anyone at the company.

Fifth, J.C. Penney argued the cause of action for racial harassment failed because Jackson could not show there was harassing conduct so severe or pervasive that it altered the conditions of employment. (*Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 465.) J.C. Penney pointed out the law requires harassing acts to be more than occasional, isolated, or sporadic. (*Id.* at p. 466.) Even considering Livingston's time-barred comments in 2008 and 2010, the conduct here did not meet these requirements. Without those time-barred instances, J.C. Penney maintained Jackson had no evidence at all of harassment.

Sixth, J.C. Penney argued the cause of action for wrongful discharge in violation of public policy failed because his underlying FEHA claims failed. He claimed he was constructively discharged due to harassment and discrimination, but there was no such harassment or discrimination.

The trial court granted J.C. Penney's summary judgment motion in its entirety. The court ruled Jackson had not disputed the evidence on which J.C. Penney relied to show legitimate reasons for demoting him to sales associate, a lack of racial animus, and an absence of incidents within the limitations period. The court entered an order dismissing the case, and Jackson timely appealed.

**DISCUSSION**

Jackson contends the trial court erred in granting J.C. Penney's summary judgment motion. While we review the court's order granting summary judgment de novo (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860), we presume an order or judgment of the lower court to be correct, and an appellant must affirmatively demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "'This is not

5

only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Ibid.*) Part of an appellant's burden on appeal includes supporting his or her factual assertions with citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) We have no duty to search the record for evidence supporting an appellant's factual assertions, and if the appellant fails to support an argument with the necessary citations to the record, we may deem the argument forfeited. (*Nowsu v. Uba*, at p. 1246.)

Here, Jackson has forfeited his contention of trial court error because his briefing contains absolutely no citations to the record, even in the "Statement of Facts" section of the opening brief. He recites facts and makes conclusory factual assertions throughout his briefing and yet provides no support for them. This case is akin to *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108 (*Guthrey*), in which the court held the plaintiff waived his contention that the trial court erred in granting the defendants' summary judgment motion. (*Id.* at p. 1116.) The *Guthrey* plaintiff contended "'a plethora of admissible evidence'" indicated a triable issue of fact on his claims for gender discrimination, hostile gender-based harassment, and retaliation. (*Id.* at p. 1115.) But he failed to identify this evidence or its location in the record. (*Ibid.*) In finding waiver, the court characterized the plaintiff's briefing as "'""a mere challenge to respondents to prove that the court was right,"'"" rather than "'""a fair and sincere effort to show that the trial court was wrong."'"" (*Id.* at pp. 1115-1116.) Similarly, Jackson has not properly carried his burden here. For instance, he contends "a bona fide issue of fact exists" as to whether he was a victim of racial discrimination. He refers to his own declaration and the declaration of a former coworker, but he does not provide citations to the record for these declarations, and more significantly, he does not explain what statements in these declarations support his argument.[2]

---

[2]    Further, the trial court sustained objections to the majority of these declarations. On appeal, we do not consider evidence to which the trial court sustained objections

Even were we to consider his arguments, we would not find error. Much of Jackson's briefing consists of statements of legal principles without applying them to any specific circumstances before the court. The end result is that he has failed to affirmatively demonstrate error. To the extent we can ascertain his argument, he mainly argues that Livingston's comments "set the tone" for his treatment by others or set in motion a plan to brand him a poor supervisor even years after Livingston left. J.C. Penney proffered evidence that he was not performing his duties as a supervisor satisfactorily, and that was why his manager placed him on a PIP and offered him a sales associate position in the alternative. Once an employer has proffered substantial evidence of a legitimate, nondiscriminatory reason for its actions, any presumption of discrimination disappears, unless the employee can show the proffered reasons were a pretext. (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at p. 356.) But Jackson points to no evidence demonstrating the criticisms of his work were unjustified. He merely speculates his managers must have been influenced by Livingston's comments. Speculation is not evidence, nor can speculation, conjecture, imagination, or guess work create a triable issue of fact. (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 864; *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525.) As the case is here, "If [a] plaintiff produces *no* evidence from which a reasonable fact finder could infer that the employer's true reason was discriminatory, the employer is entitled to summary judgment." (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.)

Jackson also argues Livingston's two comments constituted flagrant harassment, but again he fails to demonstrate the trial court erred. J.C. Penney acknowledges that the comments Jackson attributed to Livingston are clearly offensive, and to be sure, we agree. Even if these comments constituted harassment, however, Jackson was time-barred from recovering for the comments. A plaintiff must file a timely administrative

---

(*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 285)—unless, of course, the appellant can show the trial court erred in sustaining the objections. Jackson does not argue the court erred in sustaining these objections.

complaint with the DFEH before filing a lawsuit for harassment. (*Trovato v. Beckman Coulter, Inc., supra*, 192 Cal.App.4th at p. 323.) The plaintiff must file the administrative complaint within one year of the date on which the alleged harassment occurred. (Gov. Code, § 12960, subd. (d); *Trovato v. Beckman Coulter, Inc., supra*, 192 Cal.App.4th at p. 323.) Jackson did not comply with the one-year statute of limitations in this case because Livingston's last comment was in February 2010, and he did not file the DFEH complaint relating to her comments until January 2012. (*Trovato v. Beckman Coulter, Inc., supra*, at pp. 323-324.)

Jackson contends his complaint was nevertheless timely because the continuing violation doctrine tolled the statute of limitations. Under this doctrine, an employer's actions "should be viewed as a single, actionable course of conduct if (1) the actions are sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer to obtain accommodation or end harassment would be futile." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802.) The statute of limitations begins to run "when the course of conduct is brought to an end . . . or when the employee is on notice that further efforts to end the unlawful conduct will be in vain." (*Id.* at p. 823, italics omitted.)

In this case, Jackson asserts Livingston's comments, the criticisms of his job performance in 2010 and 2011, and his demotion in August 2011, constituted a single course of conduct. Livingston's offensive comments and the other acts he alleges were not similar in kind. Jackson acknowledged no one at J.C. Penney but Livingston made race-based comments to him or about him. He specifically testified several managers responsible for criticizing him in 2011 never made harassing comments. As to Whittaker, Livingston's successor as store manager, he said he never heard of her making race-related comments, nor did she engage in conduct that he perceived as part of a "ruse or an excuse" for racial discrimination against him. As to the sales manager who was his direct supervisor, Norma Pena, she never "said anything that indicated any sort of racial or discriminatory motive" toward him, and her behavior never demonstrated "that she

was motivated by an intent to discriminate" against him. He described Pena as a "[w]onderful lady." As to the merchandise execution manager, Bryan Sager, Jackson was not aware of Sager having any discriminatory motive toward him, and Jackson said he did not have evidence that Sager's criticisms of his work were motivated by racial animus. In sum, Jackson had no evidence of overtly harassing comments or acts like Livingston's. There was no harassment "similar in kind" to string together with Livingston's comments.

More fundamentally, the purported discriminatory conduct to which Jackson would connect Livingston's conduct constituted justified criticism of his job performance, the trial court found. A continuing violation exists only if *unlawful conduct* occurring outside the limitations period is sufficiently connected to *unlawful conduct* within the limitations period. (*Richards v. CH2M Hill, Inc., supra*, 26 Cal.4th at p. 802.) Justified criticism of job performance does not constitute unlawful conduct. Jackson fails to show the continuing violation doctrine applied.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.


9