Filed 2/18/15  Sanchez v. Time Warner CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERIKA SANCHEZ, | B249725 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC475767) |
| v. | |
| TIME WARNER, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

Law Offices of Stephen A. Ebner, Stephen A. Ebner and Stephen J. Reiss for Plaintiff and Appellant.

Hill, Farrer & Burrill, James A. Bowles and Casey L. Morris for Defendants and Respondents.

———————————————

Plaintiff and appellant Erika Sanchez brought this action against her employer Time Warner, Inc. (TWI) and Freda Watson, her immediate supervisor, alleging claims for race discrimination, race harassment, and failure to prevent discrimination and harassment under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[1] Watson is an African-American female, and Sanchez is an Hispanic female. Watson's comments to Sanchez, which form the basis of her FEHA claims, compare Sanchez in both her physical appearance and her actions to the physical appearance and actions of an African-American female. Sanchez found these comparisons offensive because she believed Watson was "putting her race down." The trial court granted TWI's and Watson's summary judgment motion and entered judgment. Sanchez appeals. We affirm, concluding as the trial court did that the conduct complained of by Sanchez does not raise a triable issue of fact as to any of her FEHA claims.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Sanchez's Employment with TWI*

In March 2010, Sanchez was hired to work as a sales retention specialist at TWI's Culver City office. Sanchez was born in El Salvador and is an Hispanic female.

Watson was Sanchez's supervisor from March or April of 2010 until the beginning of February 2011. Watson is an African-American female.

Orlando Hadnot was Watson's direct supervisor and manager of sales and retention at the Culver City office. Hadnot is an African-American male.

Beginning in August 2010 and ending in late January 2011, Sanchez received progressive discipline warnings for attendance policy violations and for failing to meet performance expectations. In August 2010, Watson gave Sanchez a verbal warning for failing to meet performance goals. The next month, Watson gave Sanchez a verbal warning for excessive absenteeism and tardiness during a six-month period. In January 2011, Sanchez received a written warning for excessive absenteeism and for failure to

---

[1] Unless indicated, all further statutory references are to the Government Code.

2

meet performance goals.  Sanchez received a final written warning concerning her absenteeism on January 20, 2011.

In late January 2011, Sanchez commenced a workers' compensation leave of absence.  She was on leave until March 19, 2012.  Sanchez returned to work at the Culver City office where Watson remained a supervisor, although she was no longer under her direct supervision.

Sanchez's FEHA claims are based upon her employment tenure working under Watson's supervision.

2. *Sanchez's Complaint for Race Discrimination, Race Harassment, and Failure to Prevent Discrimination and Harassment*

After obtaining a right to sue letter from the Department of Fair Employment and Housing, Sanchez filed a complaint against TWI and Watson, alleging race discrimination against TWI (§ 12940, subd. (a)), race harassment against TWI and Watson (*id.*, subd. (j)(1)), and failure to prevent discrimination and harassment against TWI (*id.*, subd. (k)).[2]

a. *Watson's Race Comparisons and Race-Based Comments*

The complaint alleges Watson made several comments about Sanchez's physical appearance and conduct, which included comparing Sanchez to African-Americans.

Upon initially meeting Sanchez, Watson allegedly looked Sanchez up and down and told her, " 'You're cute.' "

---

[2]     In Sanchez's separate statement of additional material facts in dispute, there is a reference to Watson's " 'sexual' harassment."  The complaint does not allege a cause of action for sexual harassment.  In her opening brief, Sanchez cites to an investigation report finding no evidence of " 'sexual-or gender-based harassment in the legal sense,' " but her objection to the admission of this evidence was sustained.  In evaluating a summary judgment motion, we consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court.  (Code Civ. Proc., § 437c, subd. (c).)  We therefore do not consider this evidence.  We grant Sanchez's motion to augment the record to include evidence submitted in opposition to the summary judgment that was omitted from the clerk's transcript.

Thereafter, and on a continuing basis, Watson allegedly made comments about Sanchez's appearance such as: " 'Those are cute pants – I used to have pretty hair like you – I used to have a body like yours – You have a small waist and a big butt – Hispanic people don't have big butts – Hispanic people don't look black like you do.' "

Watson also allegedly commented to Sanchez that " 'You have a black girl's body – You dress black – You talk black – You look like you're mixed with black – You have a big butt like a black girl.' "

Watson saw a picture of Sanchez's daughter and told Sanchez that " '[y]our daughter looks mixed black.' " Watson questioned Sanchez as to whether she was dating, or had dated, African-American men.

During the Christmas season, it is alleged that Watson asked Sanchez, " '[d]o you eat black people's food?' " On another occasion, Watson told Sanchez: " 'Don't make me whoop you.' "

Watson asked Sanchez " 'where she was born' " and " 'when she came to the United States.' "

b. *Sanchez Complains about Watson's Comments and Conduct*

Sanchez alleges she "continually" complained about Watson's comments to another supervisor, Maria Paez-Orozco, to no avail. Watson's alleged harassment, along with management's failure to take appropriate remedial actions, allegedly made Sanchez's working conditions and her continued employment intolerable and stressful.

3. *Summary Judgment Motion*

TWI and Watson filed a motion for summary judgment, which Sanchez opposed. Evidence presented in support of, and in opposition to, the summary judgment revealed the following undisputed facts.

### a. *Watson's Race-Based Comments and Racial Comparisons*

In the presence of Sanchez's coworkers, Watson made comments to Sanchez as alleged in the complaint.[3]  At least 10 times, Watson made a comment to Sanchez that she looked "like a Black girl."  Sanchez testified that she considered Watson's comment about eating "black people food" harassment because "everything was just a black thing, and I felt she was picking at me for my race because I shouldn't be probably eating black people food or having a black boyfriend."  Sanchez believed that Watson's comparisons of her physical appearance to an African-American woman were inappropriate.  Sanchez testified:  "She's saying that I looked black, that I eat black people food, that's why black [men] like me, that's why I like black men.  I felt it was putting my own race down."[4] She explained further that these racial comparisons "put down her race" because "I'm not Black.  I'm Hispanic."

Sanchez dreaded going to work.  She resented being interrupted and distracted by Watson's comments while she was trying to work.  Sanchez felt frustrated, uncomfortable, and demeaned by Watson's comments.

### b. *TWI's Knowledge of Watson's Comments and TWI's Response*

Paez-Orozco, a TWI supervisor, was aware of Watson's comments to Sanchez.  Hadnot, the manager of sales and retention of the Culver City office, also was aware of Watson's comments to Sanchez.

---

[3]  For purposes of summary judgment, the pleadings define the issues.  (*Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1120.)  Therefore, we disregard Watson's evidence of additional comments and other allegations of coworker harassment that were not alleged in the operative complaint.

[4]  The following excerpt from Sanchez's deposition was submitted in support of the motion for summary judgment:  "Q  So other than the discussions about food, what else did Freda [Watson] say that you considered harassment because of your race?  [¶]  A  That I had a big butt like a black girl; that I was shaped like a black girl; that I looked black.  She would make these remarks in front of supervisors numerous of times throughout the year that I was there working."

5

On February 1, 2011, Sanchez complained to human resources manager Pam Brown after Watson threatened to discipline Sanchez for "disrespecting" her. This was the first time that Sanchez complained to human resources about Watson. Sanchez testified that she waited until she received her final warning to complain to human resources because Watson threatened her with termination and she was afraid of losing her job.

On February 8, 2011, Sanchez filed a written complaint against Watson.

On March 1, 2011, Sanchez spoke to Kim Congdon, vice president of human resources. Sanchez complained that Watson made inappropriate comments to her about her race. Paul Falcone, vice president of employee relations, conducted an investigation. Falcone did not interview Sanchez.

On March 28, 2011, Congdon provided Sanchez with the results of Falcone's investigation. At Sanchez's request, Congdon conducted a second investigation. Congdon sent Sanchez a letter dated April 15, 2011, informing Sanchez of the investigation findings.

c. *Trial Court's Written Order Granting the Summary Judgment Motion*

The trial court granted the summary judgment motion. The trial court concluded that Sanchez had not presented a triable issue of fact as to essential elements of her prima facie case of race discrimination because there was no issue of fact as to whether she had suffered an adverse employment action or that Watson had a discriminatory motive. In reaching this conclusion, the trial court rejected Sanchez's contention that Watson's comments raised an inference of discriminatory animus toward Hispanics. As for the race harassment claim against Watson and TWI, the trial court concluded many of the alleged comments were race neutral, and the remaining comments directed toward Hispanics were not sufficiently severe or pervasive to constitute a hostile work environment. Because these two causes of action failed, the trial court concluded that the third cause of action for failure to prevent race discrimination and harassment also failed.

Following entry of judgment in favor of TWI and Watson, Sanchez filed a timely notice of appeal.

6

DISCUSSION

1. *Standard of Review*

A motion for summary judgment must be granted if the submitted papers show there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party initially bears the burden of production to make a "prima facie showing of the nonexistence of any genuine issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.)  "A prima facie showing is one that is sufficient to support the position of the party in question."  (*Id*. at p. 851.)  A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).)  If the defendant meets this burden, the burden of production shifts back to the plaintiff to make a prima facie showing of the existence of a triable issue of fact as to that cause of action or defense.  (*Id*., subd. (p)(2).) A triable issue of material fact exists, "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850.)

We independently review the record and the determination of the trial court.  First, we identify the issues raised by the pleadings, because it is those allegations to which the motion must respond.  Second, we determine whether the moving party's showing has established facts negating the opponent's claims and justifying judgment in the moving party's favor.  The third, and final step, is to determine whether the opposition demonstrates the existence of a triable, material issue of fact.  (*Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 290.)

2. *There is no Material Dispute of Fact as to Sanchez's Race Discrimination Claim*

To state a prima facie claim of discrimination in violation of the FEHA (§ 12940, subd. (a)), Sanchez must establish that (1) she is a member of a protected class, (2) she was performing competently in the position she held, (3) she suffered an adverse

7

employment action, and (4) some other circumstance that suggests a discriminatory motive. (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1246.) If Sanchez makes a prima facie showing, the burden shifts to TWI to provide a legitimate, nondiscriminatory reason for the challenged employment decision. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355-356.) If TWI meets this burden, Sanchez must produce substantial evidence demonstrating the employer's reason was a pretext for discrimination. (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.)

This three-part framework is modified in the summary judgment context. TWI, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of Sanchez's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors. (*Hicks v. KNTV Television, Inc.*, *supra*, 160 Cal.App.4th at p. 1003.) We conclude, as the trial court did, that there is no evidence in the record to raise a triable issue that Sanchez suffered an adverse employment action, a necessary element of her prima facie case of race discrimination.

Sanchez argues on appeal that she has raised a triable issue on whether she suffered an adverse employment action by citing to the following incidents: (1) Watson threatened her with termination and interrupted her work; (2) Brown misrepresented their meeting in an e-mail that Brown sent to Congdon following Sanchez's initial complaint to human resources; and (3) TWI "caused Sanchez to return to work at the same location as and in close proximity to Watson after Sanchez reported racial harassment by Watson."

To be actionable, an adverse employment action must materially affect the terms, conditions, or privileges of employment. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1053-1055.) Minor adverse actions do not qualify – Sanchez had to show she suffered an adverse employment action such as termination, demotion, or denial of an available job. (*Id.* at pp. 1054-1055; *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 355.) Or, otherwise stated, an adverse employment action is one that is

8

"reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." (*Yanowitz*, *supra*, at p. 1054.)

Neither Sanchez nor TWI adequately argues this issue on appeal with citation to legal authority and to the record. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived [or forfeited]."].) Because Sanchez had the burden on appeal, we consider the argument forfeited.

In any event, Sanchez's disparate treatment claim fails as a matter of law because none of the actions stated above raises a triable issue of fact as to an adverse employment action as defined in *Yanowitz*. Sanchez testified that Watson's discipline, which included performance issues, was not based upon her race. Sanchez was not terminated, demoted, reassigned, or denied an opportunity for advancement because of her race. Thus, this disparate treatment cause of action alleging race discrimination fails as a matter of law.

3. *Race Harassment Based Upon a Hostile Work Environment*

The parties' appellate briefs focus on Sanchez's race harassment claim (§ 12940, subd. (j)(1)) against TWI and Watson. The FEHA prohibits "an employer . . . or any other person" from harassing an employee because of race, national origin, or ancestry. (*Ibid*.; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 129 (lead opn. of George, C.J.).)[5] Unlike discrimination, " 'harassment consists of a type of conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' " (*Reno v. Baird* (1998) 18 Cal.4th 640, 645-646, quoting *Janken v. GM Hughes*

---

[5] The federal counterpart of the FEHA, title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.), also states that harassment in the workplace may give rise to a cause of action for employment discrimination. Title VII cases can be considered when interpreting the scope of the FEHA. (*Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 464.)

*Electronics* (1996) 46 Cal.App.4th 55, 63-65.) "Thus, harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706.) Under the FEHA, Watson is individually liable for harassment. (§ 12940, subd. (j)(3).) When the harasser is a supervisor, the employer is strictly liable for the supervisor's actions. (*Roby v. McKesson Corp.*, *supra*, at p. 707.)

          a.   *Governing Legal Principles*

To prevail, an employee claiming race harassment based upon a hostile work environment must demonstrate that the conduct complained of is severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their race. (See *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 278-279 (*Lyle*).) To avoid summary judgment on her claim of a racially hostile work environment, Sanchez, as a member of a protected class, must raise a triable issue that (1) she was subjected to unwelcome race harassment subjectively and objectively; (2) the harassment was based on her race; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability. (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608.)

"Harassment includes ' "epithets, derogatory comments or slurs . . . ." ' " (*Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30, 35 (*Dee*).) Harassment "communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.*, *supra*, 47 Cal.4th at p. 706.) Not all workplace harassment will give rise to a FEHA violation. "The working environment must be evaluated in light of the totality of the circumstances: '[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

10

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' [Citation.]" (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462.)

As noted, "harassment must satisfy an objective and a subjective standard." (*Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 588.) The objective severity of harassment is judged from the perspective of a reasonable person in the plaintiff's position, given all the circumstances. (*Lyle*, *supra*, 38 Cal.4th at pp. 283-284.) "That means a plaintiff who subjectively perceives the workplace as hostile and abusive will not prevail under the FEHA, if a reasonable person in the plaintiff's position, considering all the circumstances, would not share the same perception. Likewise, a plaintiff who does not perceive the workplace as hostile or abusive will not prevail, even if it objectively is so." (*Id.* at p. 284.) This objective component must be assessed from the " 'perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff.' " (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 263-264.)

b. *There is No Material Dispute as to the Objective Component*

It is undisputed that Watson's comments were unwelcome; Sanchez felt as if Watson was "putting her race down," and Sanchez testified that she suffered emotional harm. But, this evidence goes toward the subjective, not the objective component of a harassment claim. As to the objective component, Sanchez states the issue as whether " 'employees have the right to be Hispanic (or any other race, for that matter) and not be told they act like, look like, or should be, some other race, both continuously and repetitively, while performing their job?' " We frame the issue as whether a reasonable Hispanic woman subjected to the racial comparisons attributed to Watson would consider them to be disparaging or derogatory toward her race or national origin considering all the workplace circumstances.[6]

---

[6] We do not address the comments Watson made to Sanchez of a sexual nature because Sanchez has not pursued a cause of action for sexual harassment.

Watson's comments are not evidence of unambiguous racial slurs, derogatory comments, or epithets directed toward Hispanics. (See, e.g., *Aguilar v. Avis Rent A Car System, Inc.*, *supra*, 21 Cal.4th at pp. 126-127 [hostile work environment based upon supervisor's comments only to Latino employees calling them derogatory and demeaning names and commenting on their lack of English language skills]; *Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634, 638, 642-644 [no hostile work environment under Title VII based upon unfair treatment by supervisor and isolated racially related epithets that employee had a " 'typical Hispanic macho attitude' " and should work in the field because " 'Hispanics do good in the field' "].) Moreover, none of Watson's racial comparisons evoked racial stereotypes associated with Hispanics or had any apparent racially pejorative purpose or motive to raise a triable issue of fact when considered under the totality of the workplace circumstances.

Sanchez contends the FEHA prohibits racial comparisons such as the comments Watson made to her, citing to *Dee, supra*, 106 Cal.App.4th 30. *Dee* was a race/national origin harassment case but it does not stand for the proposition that any racial comparison in the workplace is a legally cognizable claim of race harassment under the FEHA. *Dee* is inapposite.

In *Dee*, *supra*, 106 Cal.App.4th 30, the Court of Appeal reversed a summary judgment entered in favor of the employer, concluding that the supervisor's ethnic slur, combined with other abusive evidence, raised a triable issue of fact as to whether the employer had created a hostile work environment. (*Id*. at pp. 35, 37.) Andy Marsh was Dee's direct supervisor, and Paul Strickland was Marsh's supervisor. Strickland verbally abused Dee, and on one occasion asked her to steal a document from Marsh's desk and scolded her when she got caught. (*Id*. at p. 33.) On another occasion, Strickland asked Dee to " 'make up stories' " to hide information from Marsh, which Dee believed meant to "tell a lie." (*Ibid*.) "Strickland said, 'Did I tell you to lie?' Dee replied, 'Well, you did not tell me to lie. You told me to make up stories. Isn't that the same as telling a lie?' Strickland said, 'Well, what are you, a Filipino?' Dee said, 'Yes, a Filipino.' Strickland said, 'Well, it is your Filipino understanding versus mine.' " (*Ibid*.)

The *Dee* court concluded that the comment – " 'it is your Filipino understanding versus mine' " – to an employee of Filipino descent was an ethnic slur that was abusive and hostile. (*Dee*, *supra*, 106 Cal.App.4th at pp. 36-37.) The court reasoned that the ethnic slur explained Strickland's discriminatory motive for creating an abusive working environment in which he "berated her, 'harassed' her, ordered her to lie and blamed her for tasks he ordered her to perform," and "called her a 'bitch' and 'constantly' used the word 'asshole.' " (*Id*. at pp. 36-37.) Thus, in *Dee*, the court concluded that based upon the totality of the circumstances, a reasonable trier of fact could infer the racial slur was evidence of a discriminatory animus toward Filipinos.

Unlike *Dee*, no inference of racial animus toward Hispanics can be drawn from Watson's comments. Sanchez testified that she did not like the comparison to an African-American because "she is not Black," not because Watson harbored racial animosity toward Hispanics. We cannot, as the *Dee* court did, conclude that a reasonable inference can be drawn based upon the totality of the circumstances that Watson's comments about her own race (African-American) reflect a discriminatory animus toward Hispanics. Because harassment has both a subjective and objective component, we conclude that an essential element of this cause of action cannot be satisfied. The trial court did not err in granting summary judgment as no reasonable jury could find in Sanchez's favor on this claim.

4. *Failure to Prevent Discrimination and Harassment*

Courts have required a finding of actual discrimination or harassment under the FEHA before a plaintiff may prevail on a claim for failure to prevent discrimination and harassment (§ 12940, subd. (k); *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4.) Because Watson has not met her burden to raise a triable issue of fact as to her race discrimination and race harassment claims, this claim fails as a matter of law.

13

DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

KITCHING, J.

14