Filed 6/26/23  Vieira v. Kaiser Foundation Hospitals CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JODI VIEIRA, | B317139 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. |
| v. | 19VECV01454 |
| KAISER FOUNDATION HOSPITALS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed.

Jodi Vieira, in pro. per., for Plaintiff and Appellant.

Cozen O'Connor, Michele Ballard Miller, John R. Carrigan, Jr., and H. Sarah Fan for Defendants and Respondents.

Plaintiff Jodi Vieira appeals a summary judgment in favor of defendants Kaiser Foundation Hospitals (KFH) and Kaiser Foundation Health Plan, Inc. (KFHP).  We conclude the trial court reasonably exercised its discretion to deny plaintiff's request to continue the summary judgment hearing and there is no merit to plaintiff's contention that she did not receive sufficient notice of the motion.  Defendants' evidence proved KFH had lawful reasons for the adverse employment action at the heart of plaintiff's claims and plaintiff failed to produce responsive evidence suggesting those reasons may be pretextual. We affirm.

## FACTS AND PROCEDURAL HISTORY

### 1. *The Complaint*

Plaintiff sued defendants in a four-count complaint, asserting causes of action for (1) disability discrimination, harassment, and retaliation (Gov. Code, § 12940); (2) violation of the California Family Rights Act (Gov. Code, § 12945.2); (3) whistleblower retaliation (Lab. Code, § 1102.5); and (4) retaliation and wrongful termination in violation of public policy.

She alleged defendants had employed her for over 10 years in an unspecified capacity.  In late-January 2018, plaintiff requested and received medical leave from defendants to recuperate from ongoing stress, anxiety, and panic attacks. When she returned to work on May 2, 2018, defendants informed plaintiff she "had no choice but to resign, or be terminated" for an "incident" that occurred in January 2018 before she took medical leave.  Due to the "stress of this incident," plaintiff's physician placed her back on medical leave the same day.  While she remained on leave, defendants advised plaintiff that she

would be placed on an "action plan, in lieu of termination" when she returned to work. Defendants later "retract[ed] the action plan, and suspend[ed] [p]laintiff to prevent her from working." Defendants then advised plaintiff she would have a " 'last chance' " to avoid termination by signing "away any rights to a lawsuit for unfair treatment." When she refused to sign the " 'Last Chance Agreement,' " defendants terminated plaintiff's employment.

Before returning to work in May 2018, plaintiff allegedly complained to defendants and the California Occupational Safety and Health Administration (Cal-OSHA) about practices by defendants and other employees that "violated the law with respect to hazardous materials" and led to "an incident in which hazardous materials were improperly spilled, in January 2018." She alleged defendants "refused to undertake an investigation" of her complaints and "proceeded to improperly terminate" her employment after she "refused to sign a document waiving any legal right to bring a claim" against defendants.

2.     *The Summary Judgment Motion*

Defendants moved for summary judgment. Their supporting evidence showed that, on January 16, 2018, plaintiff had been working an evening shift in the Labor and Delivery Unit of Kaiser Permanente's Woodland Hills Medical Center when an expectant mother was admitted to the unit in active labor.[1] Plaintiff was assigned to be the patient's primary care nurse, and was assisted by a "traveler orientee" nurse, a charge

---

[1]     According to the declaration of a KFHP human resources consultant for the Kaiser Permanente Woodland Hills Medical Center, plaintiff was an employee of KFH and has never been employed by KFHP.

3

nurse, and a scrub technician.  After the patient delivered twins, a bucket containing a mixture of formaldehyde and water (known as "formalin") cracked and spilled onto the floor of the unit, releasing toxic fumes that jeopardized the health of several people, including the two newborn babies.

Bella Berelovich, the manager of the Labor and Delivery Unit, conducted an investigation of the incident to determine what had caused the formalin spill and to assess what, if any, discipline should follow.  As part of her investigation, on January 25, 2018, Berelovich held a meeting with plaintiff and plaintiff's union representatives, as well as the scrub technician who had been present for the incident.  Based on the evidence she developed in her investigation, Berelovich and other KFH management determined plaintiff and the scrub technician bore responsibility for the formalin spill; however, plaintiff bore greater responsibility because she had placed the bucket of formalin at the bottom of a gurney used to transport the new mother without informing the traveler nurse of the hazardous substance.  When the traveler nurse lowered the gurney, it cracked the bucket, causing the formalin spill.  Berelovich and her management colleagues determined plaintiff's conduct was "reckless" and reflected "a lack of critical thinking."

After the January 25, 2018 meeting with Berelovich, plaintiff's union representative advised her that she would likely receive a "Level 4 Corrective Action."  Under KFH's policies, a Level 4 Corrective Action is accompanied by a " 'Day of Decision' "—a one-day paid leave during which an employee must decide whether to " 'change [their] performance and/or behavior and return to the organization, or to voluntarily resign [their] employment' " with KFH.  If the employee elects to return

to work, she is responsible for completing a " 'Draft Action Plan' " form, which serves as the basis for a " 'Last Chance Agreement.' " An employee's failure to complete a Draft Action Plan form or to sign the Last Chance Agreement gives rise to a "Level 5 . . . Corrective Action," which can result in involuntary termination. After discussing the anticipated discipline with her union representative, plaintiff went out on medical stress leave.

When plaintiff returned from her leave on May 2, 2018, KFH presented her with the Level 4 Corrective Action. The next day, plaintiff again went out on medical leave and made a complaint to Cal-OSHA, alleging health and safety violations related to the handling of hazardous substances, including formalin. Cal-OSHA conducted an investigation and found no violations.

On May 26, 2018, while still out on leave, plaintiff sent a letter to Jennifer Astasio, the Director of Maternal/Child Health for KFH, giving her account of the formalin spill. Astasio was frustrated that plaintiff appeared to take no responsibility for her conduct, policy violations, and "poor judgment." Astasio was also concerned that plaintiff claimed she had not been trained regarding formalin spills when KFH's records reflected she had received training. In Astasio's view, plaintiff's complaints about a lack of sufficient supplies and personal protective equipment were unfounded and did not constitute a legitimate "complaint of allegedly unsafe working conditions because, had [plaintiff] followed her training, she would not have been the person responsible for cleaning up the Formalin spill."

On May 30, 2018, plaintiff sent Astasio a Draft Action Plan with three action items generally stipulating that plaintiff would follow all KFH safety and environmental awareness protocols in

5

the work area.  However, on June 5, 2018, plaintiff sent Astasio an "Addendum to Draft Action Plan Form," stating, among other things, "For the record, I followed all protocols and demonstrated critical thinking throughout my 16 year career and for the said incident, with the rules and protocols that were already set in place."  Astasio determined plaintiff was, once again, refusing to take responsibility for her part in the incident.

After plaintiff returned from leave, KFH scheduled another meeting to discuss the Level 4 Corrective Action.  On June 6, 2018, Astasio sent an email to plaintiff's union representative, explaining that, in order to move forward with the meeting, plaintiff would have to confirm her commitment to the original Draft Action Plan, without incorporating the Addendum.  Astasio warned, "If [plaintiff] is not committed to take responsibility and change her performance and/or behavior, then this means that she is unable to meet the requirements [of the Level 4 Corrective Action] and therefore should prepare to voluntarily resign, and as the employer we can advance the corrective action process to Level 5, [which] may result in the involuntary termination of employment."  Plaintiff's union representative confirmed plaintiff had agreed to work with the Draft Action Plan and wished to move forward with the meeting.

On June 6, 2018, plaintiff and her union representatives met with Astasio.  Astasio reiterated that KFH could not accept plaintiff's proposed Addendum.  Plaintiff refused to withdraw the Addendum, even after several caucus sessions with her union representatives.  As a result, Astasio placed plaintiff on a "paid investigatory suspension" to enable KFH to review the circumstances precipitating the Level 4 Corrective Action

and to determine whether further disciplinary action was warranted.

On June 19, 2018, plaintiff and her union representatives met with Astasio and other KFH management to discuss the Draft Action Plan and a Last Chance Agreement. Plaintiff again refused to sign the documents, even after she was advised that her unwillingness to reach an agreement would leave KFH with no option but to terminate her employment.

On June 22, 2018, plaintiff's union representative notified KFH management that plaintiff was willing to sign the Last Chance Agreement, and another meeting was scheduled. Before the meeting, however, plaintiff advised Astasio that she had changed her mind and she remained unwilling to sign the agreement. Astasio again advised plaintiff that her refusal to reach an agreement could lead to termination of her employment. Plaintiff responded, "Yes I understand. Do what you have to do."

Due to plaintiff's continued refusal to fulfill the terms of the Level 4 Corrective Action, Astasio and the other KFH management decided to terminate plaintiff's employment, effective July 2, 2018. To Astasio's knowledge, plaintiff is the only KFH employee to have refused to submit a Draft Action Plan after receiving a Level 4 Corrective Action.

Based on the foregoing evidence, KFH argued it had a legitimate, non-discriminatory reason for all adverse employment actions taken against plaintiff and it provided plaintiff with every legitimate accommodation she requested.[2]

---

[2] KFHP argued it was not plaintiff's employer and therefore could not be held liable for her employment claims. Plaintiff admitted she was only a KFH employee at her deposition and

7

Plaintiff opposed the summary judgment motion, offering her own declaration in support. She declared KFH's investigation had revealed the scrub technician who received only a Level 3 Corrective Action had violated the "usual and customary practice" by bringing the bucket containing formalin into the delivery unit. Plaintiff maintained she was "unaware of the bucket full of the toxic formalin" because she had been with "her patient at all times." She also asserted her requests for an investigation into the spill incident and clarification of KFH's disciplinary actions "went woefully unanswered." However, in her response to defendants' separate statement of undisputed facts, plaintiff conceded it was "[u]ndisputed" that KFH's disciplinary decisions were "not based" on whether plaintiff "had engaged in any protected activity of any kind (such as making any complaints about safety, or taking any medical leave) or on whether . . . [plaintiff] did or did not suffer from any disability." She also conceded it was "[u]ndisputed" that KFH terminated her employment "[b]ased on her continued refusals to sign a Last Chance Agreement."

3. *The Judgment*

The trial court granted defendants' motion for summary judgment, concluding KFH had presented evidence of a nondiscriminatory and nonretaliatory reason for the adverse employment action—namely, KFH's good faith belief that plaintiff was responsible for the formalin spill and her unwillingness to take personal responsibility for the incident—and plaintiff had failed to present evidence suggesting the reason was a pretext for unlawful discrimination.

---

the trial court granted KFHP summary judgment on that basis. Plaintiff does not appear to challenge that ruling on appeal.

8

Plaintiff filed a timely notice of appeal.

## DISCUSSION

**1.    *Plaintiff Received Sufficient Notice of the Summary Judgment Motion***

Plaintiff contends she received inadequate notice of defendants' summary judgment motion.  Without citation to the record, she asserts defendants served notice of the motion by mail less than 80 days before the hearing date.  (See Code Civ. Proc., § 437c, subd. (a)(2)[3] [75-day notice period for summary judgment motion shall be increased by five days if notice is served by mail to address in California].)

Contrary to plaintiff's contention, the record establishes defendants *personally* served plaintiff at her residence with notice of the summary judgment motion and supporting documents 76 calendar days before the appointed hearing date. Plaintiff received sufficient notice of the motion.

**2.    *Plaintiff Failed to Submit an Adequate Affidavit or to Make a Timely Application for Continuance of the Summary Judgment Hearing***

Section 437c, subdivision (h) directs that a motion for summary judgment shall be denied, or a continuance shall be granted, "[i]f it appears from the affidavits submitted in opposition . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented . . . ."  A party opposing summary judgment may also apply for a continuance to obtain necessary discovery "at any time on or before the date the opposition response to the motion is due."  (*Ibid.*)

The party seeking a continuance under section 437c, subdivision (h) must show " '(1) the facts to be obtained are

_____

[3]    Statutory references are to the Code of Civil Procedure.

9

essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.' " (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633.) While "continuances are to be liberally granted," the decision whether to grant such a continuance is ultimately within the discretion of the trial court. (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395; *FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72.)

Plaintiff argues the trial court abused its discretion by declining to continue the summary judgment hearing to allow her to conduct further discovery. However, she does not identify any part of the record where she made the showing required under section 437c, subdivision (h), and our review of her declaration in opposition to the summary judgment motion confirms the affidavit was inadequate to satisfy her statutory burden.

The following two sentences in plaintiff's declaration are all we can find remotely addressing the issue: "Plaintiff is continuing to conduct [d]iscovery in efforts to obtain statements from parties who were known to be in the room at the time of the incident. This includes, the patient, patients' family and Kaiser personnel." This was insufficient. Section 437c, subdivision (h) "requires more than a simple recital that 'facts essential to justify opposition may exist.' The affidavit or declaration in support of the continuance request must detail the specific facts that would show the existence of controverting evidence." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715; see also *Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 420 [finding "insufficient" declaration that simply stated " 'additional information and testimony is still required in order

10

to adequately respond to Defendant's Motion' "]; cf. *Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30, 35 [declaration explaining witness "made admissions that were 'essential' to [plaintiff's] case" regarding "hostile working environment" and plaintiff's counsel had "acted promptly" to obtain deposition transcript held sufficient to mandate continuance under § 437c, subd. (h)].)

Plaintiff likewise failed to file a timely application for a continuance under the statute.  The record discloses it was not until "commencement of the hearing" on defendant's summary judgment motion that plaintiff first made an "ex-parte application for continuance."  The trial court denied the application and proceeded to hear argument on the motion. This was not an abuse of discretion.  (See § 437c, subd. (h) [party opposing summary judgment may apply for a continuance "at any time on or before the date the opposition response to the motion is due"]; *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1056 [to obtain a continuance the party opposing summary judgment must "demonstrate, either in their opposition papers or in a separate application filed no later than their opposition papers, that the missing discovery was required"].)

3. ***KFH Proved It Terminated Plaintiff's Employment for a Lawful Reason; Plaintiff Failed to Respond with Evidence Suggesting Pretext***

On appeal from a summary judgment, "we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained."  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  We make "an independent assessment of the correctness of the trial court's ruling, applying

11

the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

A defendant is entitled to summary judgment upon a showing that a plaintiff's action has no merit. (§ 437c, subd. (a)(1).) The defendant meets this burden with respect to each cause of action by establishing undisputed facts that negate one or more elements of the claim or state a complete defense to the cause of action. (*Id.*, subd. (p)(2); *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487 (*Romano*).) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

In the employment discrimination context, case law has refined this burden-shifting analysis to incorporate the three-stage *McDonnell Douglas* test used to try federal discrimination claims. (See *Guz, supra,* 24 Cal.4th at p. 354, citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792; *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004–1005.) Under the *McDonnell Douglas* test, the plaintiff bears the initial burden to establish a prima facie case of discrimination; if the plaintiff is successful, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its actions; and, if the employer produces evidence of a legitimate reason, the burden shifts back to the plaintiff to show the employer's reason was a pretext to mask an illegal motive.

12

(*Guz,* at pp. 354–356; *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 662; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67–68.)

Although an employee's evidence in opposition to an employer's motion for summary judgment is construed liberally, it "remains subject to careful scrutiny." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) The employee's "subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*Ibid.*) The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, "an actual causal link between prohibited motivation and termination." (*Id.* at pp. 433–434.)

To show an employer's reason for termination is pretextual, an employee " 'cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.' " (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004–1005 (*Hersant*); *Guz, supra,* 24 Cal.4th at p. 358.) To meet his or her burden, the employee " 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," . . . and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." ' " (*Hersant,* at p. 1005.)

Plaintiff argues defendants failed to meet their initial burden in moving for summary judgment because some of the facts set forth in their separate statement were not material.

(See § 437c, subd. (b)(1).) She does not, however, identify which facts she contends were immaterial, nor does plaintiff attempt to demonstrate that striking those facts compels reversal of the summary judgment. (See *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 [on review of a summary judgment, the appellant has the burden of showing reversible error, even if she did not bear the burden in the trial court].) In any event, even if we agreed that defendants' separate statement was overinclusive, our review of the record and plaintiff's objections confirms defendants set forth (and proved) sufficient *material* facts to meet their initial burden. (Cf. *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 106 (*Reeves*) [observing, if the trial court exercises its "inherent power to strike proposed 'undisputed facts' that fail to comply with the statutory requirements" and thus "leaves the required separate statement insufficient to support the motion, the court is justified in denying the motion on that basis," but concluding overinclusive separate statement did not alone warrant reversal].)

Consistent with a defendant's summary judgment burden, a fact is material if it negates one or more elements of a claim or supports a complete defense to a cause of action. (§ 437c, subd. (p)(2); *Romano, supra,* 14 Cal.4th at p. 487; *Reeves, supra,* 121 Cal.App.4th at p. 106; see also *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926 ["to be 'material' a fact must relate to some claim or defense *in issue* under the pleadings"].) In an employment discrimination or retaliation case, because " 'the factual dispute at issue is whether discriminatory animus motivated the employer,' " any fact relevant to the employer's motivation for an adverse employment action is necessarily

14

material to the plaintiff's claim and the employer's defense. (*Hersant, supra,* 57 Cal.App.4th at p. 1005.)

Here, although plaintiff objected to a number of facts in defendants' separate statement as immaterial, she conceded it was "[u]ndisputed" that KFH's disciplinary decisions were "not based" on whether plaintiff "had engaged in any protected activity of any kind . . . or on whether . . . [plaintiff] did or did not suffer from any disability"; and that KFH terminated her employment "[b]ased on her continued refusals to sign a Last Chance Agreement." Those undisputed facts, which were supported by substantial evidence and directly related to KFH's reasons for terminating plaintiff's employment, were sufficient to meet defendants' initial burden. (See, e.g., *Hersant, supra,* 57 Cal.App.4th at p. 1006 [employer's issuance of "notice of adverse action that resulted in [plaintiff's] demotion," accusing plaintiff of "inefficiency, insubordination, neglect of duty, dishonesty and misuse of state property," sufficient to meet employer's initial burden to show nondiscriminatory reason for adverse employment action].)

Plaintiff also appears to argue the trial court failed to construe her evidence liberally and to consider all reasonable inferences deducible from that evidence. (See § 437c, subd. (c).) However, here again, plaintiff does not identify what inferences the trial court should have drawn or how those inferences would have amounted to a triable issue of material fact. (See *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 ["As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority."].) In any event,

our review of plaintiff's declaration—the only evidence she offered in support of her summary judgment opposition—confirms the trial court properly considered the evidence in ruling on the motion.

As the trial court explained, "Plaintiff['s] declaration dispute[d] in some respects the events that led up to the spill," but it offered no evidence to support an inference that KFH did not genuinely believe "plaintiff was at fault" for the incident or that KFH's decision to terminate her employment was based on anything other than plaintiff's refusal to sign the Last Chance Agreement. Even liberally construed, plaintiff's declaration at most suggested KFH management misjudged the level of culpability of the various actors. While her declaration emphasized the scrub technician had received "less harsh" discipline despite bringing the bucket containing formalin into the delivery unit, plaintiff did not dispute that her role in the formalin spill was the inciting reason for KFH's disciplinary action against her. As discussed, to demonstrate an employer's reason for termination is pretextual, an employee " 'cannot simply show that the employer's decision was wrong or mistaken,' " because " 'the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.' " (*Hersant, supra,* 57 Cal.App.4th at pp. 1004–1005.) The trial court correctly applied the applicable law and reasonably considered plaintiff's evidence in concluding that "[p]laintiff may disagree with the conclusions drawn by defendants with regard to her role in the incident, but that alone shows neither discrimination or harassment based on her medical condition, nor pretext." We find no error in the court's ruling.

**DISPOSITION**

The judgment is affirmed.  Defendants Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc. are entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

HEIDEL, J.*

---

*       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.